David Kiefer
Gregory G. Ballard (admitted *pro hac vice*)
Fabiola Vega (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
dkiefer@mwe.com
gballard@mwe.com
fvega@mwe.com

*Attorneys for BDO USA, P.C.*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KARIM P. NAJJAR, *et. al.*, individually and behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 1:24-cv-05043-CPO-EAP |
| v. | |
| RIAD SALAMEH, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
BDO USA, P.C.'S MOTION TO DISMISS THE
<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................1

STATEMENT OF RELEVANT FACTS ..............................................................3

I.   BDO USA IS NOT LIABLE FOR THE CONDUCT OF BDO
     LEBANON UNDER A "SINGLE ENTITY" THEORY...............................8

II.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST BDO USA. ...........14

     A.   Plaintiffs Have Not Stated a RICO Claim (First Cause of
          Action)..............................................................................................14

          1.   Plaintiffs fail to state a claim under Section
               1962(c). ..................................................................................15

          2.   Plaintiffs fail to state a claim under Section
               1962(d). ..................................................................................18

     B.   Plaintiffs' Unjust Enrichment Claim Fails (Sixth Cause
          of Action). .......................................................................................19

     C.   Plaintiffs' Negligence Claim Fails (Eighth Cause of
          Action)..............................................................................................21

     D.   Plaintiffs Have Failed to Plead a Viable Aiding and
          Abetting Fraud Claim (Ninth Cause of Action)................................24

III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST NON-PARTY
     BDO LEBANON..........................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re AM Int'l, Inc. Sec. Litig.*,
  606 F. Supp. 600 (S.D.N.Y. 1985) ....................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................6, 26

*Bachner + Co., Inc. v. White Rose Food, Inc.*,
  No. CIV.A. 09-2640 PGS, 2010 WL 3210689 (D.N.J. Aug. 11,
  2010) ........................................................................................................................24

*Bamberg v. SG Cowen*,
  236 F. Supp. 2d 79 (D. Mass. 2002)................................................................12

*Beck v. Prupis*,
  529 U.S. 494 (2000)...........................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................6, 7, 26

*Benamax Ice, LLC v. Merch. Mut. Ins. Co.*,
  529 F. Supp. 3d 350 (D.N.J. 2021) ...................................................................6

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) .............................................................................13

*Cast Art Indus., LLC v. KPMG LLP*,
  209 N.J. 208 (2012) ...........................................................................................23

*Crete v. Resort Condominiums Int'l, LLC*,
  No. CIV.A. 09-5665, 2011 WL 666039 (D.N.J. Feb. 14, 2011).......................19

*DeFazio v. Wells Fargo Bank Nat'l Ass'n*,
  No. CV 20-375 (SRC), 2020 WL 1888252 (D.N.J. Apr. 16, 2020)..............7, 25

*DeJoy v. Comcast Cable Commc'ns, Inc.*,
  941 F. Supp. 468 (D.N.J. 1996) .........................................................................6

*Digital Wholesale of New York, LLC v. Am. Eagle Trading Grp., LLC*,
  No. 16-3487, 2016 WL 5660462 (D.N.J. Sept. 29, 2016)..................................16

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    784 F. Supp. 2d 508 (D.N.J. 2011) ...................................................................15

*Dongelewicz v. PNC Bank Nat'l Ass'n*,
    104 F. App'x 811 (3d Cir. 2004) ...................................................................16

*E. Dickerson & Son, Inc. v. Ernst & Young, LLP*,
    361 N.J. Super. 362 (App. Div. 2003), *aff'd*, 179 N.J. 500 (2004) ...................23

*Fed. Nat'l Mortg. Ass'n v. DuBois*,
    No. CV153787JMVMF, 2019 WL 6522822 (D.N.J. Dec. 4, 2019) ...................7

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ...................................................................6

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ...................................................................8

*Grant v. Turner*,
    No. CIV.A 09-2381 (JAG), 2010 WL 988537 (D.N.J. Mar. 12,
    2010) ...................................................................18, 26

*Guidotti v. Legal Helpers Debt Resol.*,
    716 F.3d 764 (3d Cir. 2013) ...................................................................8

*Ho v. Duoyuan Glob. Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) ...................................................................12

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992) ...................................................................14

*Howard v. Klynveld Peat Marwick Goerdeler*,
    977 F. Supp. 654 (S.D.N.Y. 1997) ...................................................................12

*Indus. Bank of Latvia v. Baltic Fin. Corp.*,
    No. 93 CIV. 9032 (LLS), 1994 WL 286162 (S.D.N.Y. June 27,
    1994) ...................................................................17

*Lento v. Altman*,
    No. CV 22-4840, 2023 WL 4232158 (D.N.J. June 27, 2023) ...................................................................19

*In re Lernout & Hauspie Securities Litigation*,
    230 F. Supp. 2d 152 (D. Mass. 2002) ...................................................................10, 11

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ...................................................................18

*Livingston v. Shore Slurry Seal, Inc.*,
   98 F. Supp. 2d 594 (D.N.J. 2000)........................................................17

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004) ...........................................................8, 14

*Montich v. Miele USA, Inc.*,
   849 F. Supp. 2d 439 (D.N.J. 2012)......................................................20

*MSKP Oak Grove, LLC v. Venuto*,
   875 F. Supp. 2d 426 (D.N.J. 2012)......................................................20

*Nappier v. Pricewaterhouse Coopers LLP*,
   227 F. Supp. 2d 263 (D.N.J. 2002)......................................................27

*In re NQ Mobile, Inc. Sec. Litig.*, No. 13CV7608,
   2015 WL 1501461 (S.D.N.Y. Mar. 27, 2015)...................................11

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
   No. 03 CIV.0613 GBD, 2004 WL 112948 (S.D.N.Y. Jan. 22,
   2004) ................................................................................................9, 11

*Park v. M & T Bank Corp.*,
   No. 09-CV-02921 (DMC), 2010 WL 1032649 (D.N.J. Mar. 16,
   2010) .......................................................................................................7

*Pasqua v. Cnty. of Hunterdon*,
   No. CV14-4203FLWTJB, 2016 WL 4253958 (D.N.J. Aug. 11,
   2016) .....................................................................................................23

*Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*,
   14 F. Supp. 3d 591 (D.N.J. 2014)........................................................25

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)........................................................................16, 26

*Rocker Mgmt., L.L.C v. Lernout & Hauspie Speech Prods. N.V.*,
   No. CIV.A. 00-5965 (JCL), 2005 WL 1365772 (D.N.J. June 8,
   2005) .....................................................................................................11

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   380 F. Supp. 2d 509 (D.N.J. 2005) .................................................................11

*In re SCB Computer Tech., Inc. Sec. Litig.*,
   149 F. Supp. 2d 334 (W.D. Tenn. 2001) ........................................................28

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012) ...........................................................................14

*Shaw v. Hous. Auth. of Camden*,
   No. CIV. 11-4291 RMB/AMD, 2012 WL 3283402 (D.N.J. Aug.
   10, 2012) ...........................................................................................................6

*Shandong Reltex Leihua Co. v. Ison Int'l LLC*,
   No. 2:22-CV-57, 2023 WL 5662563 (E.D. Va. Aug. 31, 2023) .......................13

*Shearin v. E.F. Hutton Grp., Inc.*,
   885 F.2d 1162 (3d Cir. 1989) .........................................................................18

*Sheeran v. Blyth Shipholding S.A.*,
   No. CV 14-5482, 2015 WL 9048979 (D.N.J. Dec. 16, 2015)............................7

*Skidmore Energy, Inc. v. KPMG LLP*,
   No. CIV.A.3:03CV2138-B, 2004 WL 3019097 (N.D. Tex. Dec.
   28, 2004) ....................................................................................................10, 11

*Snyder v. Dietz & Watson, Inc.*,
   837 F. Supp. 2d 428 (D.N.J. 2011) .................................................................17

*Travelers Indem. Co. v. Cephalon, Inc.*,
   620 F. App'x 82 (3d Cir. 2015)........................................................................19

*Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534 (3d Cir. 1993) .........................................................................16

*Weiner v. Bank of King of Prussia*,
   358 F. Supp. 684 (E.D. Pa. 1973)...................................................................21

*Willekes v. Serengeti Trading Co.*,
   No. CV137498ESMAH, 2016 WL 5334522 (D.N.J. Sept. 22,
   2016) ....................................................................................................19, 21, 27

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 Civ. 3288, 2003 WL 21488087
    (S.D.N.Y. June 25, 2003) ...................................................................................10

**Statutes**

18 U.S.C. § 1961(1) ................................................................................................15

18 U.S.C. § 1962(c) ...........................................................................................*passim*

18 U.S.C. § 1962(d) ....................................................................................1418, 26

N.J.S.A. § 2A:53A-25(b) .................................................................21, 22, 23, 24

**Other Authorities**

Fed. R. Civ. P. 8 .................................................................................................7, 25

Fed. R. Civ. P. 8(a)...........................................................................................3, 6, 7

Fed. R. Civ. P. 9(b) ..........................................................................................*passim*

Fed. R. Civ. P. 12(b)(6)....................................................................................6, 8, 26

Defendant BDO USA, P.C. ("BDO USA") respectfully submits this

Memorandum of Law in support of its Motion to Dismiss the First Amended Class

Action Complaint (the "Amended Complaint," ECF No. 3).

## INTRODUCTION

Named Plaintiffs are eleven individuals who made U.S. dollar deposits in

Lebanese banks in the hopes of earning "extremely high interest rates." Their funds

were converted to Lira, which was pegged to the U.S. dollar, but which ultimately

was devalued as the Lebanese banking system collapsed. Plaintiffs blame their

ensuing losses on a vast conspiracy among ten Lebanese banks named as

defendants in this case and eighteen additional banks not named as defendants.

Plaintiffs also sue several accounting firms, including BDO USA, which has no

connection to Lebanon, to the twenty-eight Lebanese banks, or to Plaintiffs.

Defendant BDO USA is a professional corporation organized under the laws

of the Commonwealth of Virginia. Non-party BDO, Semaan, Gholam & Co.

("BDO Lebanon") is organized as a partnership structure under the laws of the

Republic of Lebanon. Defendant BDO USA is the U.S. member firm, and non-

party BDO Lebanon is the Lebanese member firm, of non-party BDO International

Limited ("BDO International"), a UK company limited by guarantee.

Plaintiffs do not accuse Defendant BDO USA of being part of the alleged

conspiracy. They do not accuse BDO USA of having knowledge of the alleged

conspiracy. Nor do they accuse BDO USA of auditing the financial statements of any Lebanese bank. Plaintiffs do not accuse BDO USA of *any* misconduct.

Instead, Plaintiffs seek to hold BDO USA vicariously liable for the purported misconduct of a legally distinct and separate accounting firm—BDO Lebanon. Plaintiffs maintain that the corporation and partnership laws of Virginia, the United Kingdom, and Lebanon should be ignored, and that Defendant BDO USA, non-party BDO Lebanon, and non-party BDO International should be treated as a "single entity" so that Plaintiffs can sue and recover from BDO USA for the alleged misconduct of non-party BDO Lebanon. Based on this "single entity" theory, Plaintiffs attempt to assert claims against BDO USA for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), unjust enrichment, negligence, and aiding and abetting fraud.

Plaintiffs' theory, while bold, has been thoroughly debunked. Federal courts have overwhelmingly rejected the "single entity" theory of accounting firm liability. Under the law, member firms of an international accounting network are legally distinct entities that are not vicariously liable for the conduct of other member firms by mere virtue of their membership in that network. Permitting the case to proceed would require the Court to ignore or disavow decades of well-settled law.

Assuming *arguendo* that BDO USA could be held liable for the conduct of BDO Lebanon (it cannot), Plaintiffs' claims fail to pass muster under even the most liberal pleading standards of Rule 8(a)—let alone Rule 9(b)'s heightened pleading requirements, which apply to the claims sounding in fraud.

The Amended Complaint should be dismissed as to BDO USA in its entirety with prejudice. Plaintiffs have already amended their complaint as of right, and any request for leave to amend should be denied as futile.

## STATEMENT OF RELEVANT FACTS

BDO USA is a Virginia corporation with its principal place of business in Chicago, Illinois. (Am. Compl. ¶ 40.) BDO USA is a member firm of the BDO International network of independent public accounting, tax, and advisory firms.[1] Although BDO International's member firms provide professional services throughout the world (*see id.*), the Amended Complaint does not deny that, as disclosed on BDO International's website, each of these firms is "independent" and a "separate legal entity" that has "no liability for another such [member firm's] acts or omissions."[2] Plaintiffs do not allege that BDO USA performed any audits or accounting services to any Lebanese bank.

---

[1] BDO Global, "Website Terms and Conditions, at https://www.bdo.global/en-gb/website-terms-and-conditions (last visited Nov. 18, 2024).

[2] *See id.* The website further discloses that "[n]othing in the arrangements or rules of the BDO network shall constitute or imply an agency relationship or a partnership between [BDO International] member firms."

Instead, Plaintiffs allege a complex banking conspiracy involving Lebanese banks, the banks' accountants, and numerous non-party conspirator banks. The Amended Complaint alleges that the Lebanese Central Bank conspired with Lebanese commercial banks to fraudulently induce U.S.-based Plaintiffs to make deposits into dollar-denominated accounts in Lebanon. (Am. Compl. ¶ 14.) After convincing these depositors to convert their U.S. dollars to the "nearly worthless" Lira, the banks thereafter prevented the depositors from withdrawing their deposits. (*Id.* ¶¶ 54, 69–73, 77.) This scheme, Plaintiffs claim, was aided by the banks' accountants, which signed off on the banks' "misrepresentations about their financial health" without asking questions. (*Id.* ¶¶ 66, 139.)

Plaintiffs do not allege that BDO USA had any role in this conspiracy. Rather, Plaintiffs claim that the BDO International's "Lebanon affiliate" (BDO Lebanon) audited the financial statements of Byblos, one of the defendant banks. (*Id.* ¶ 40.) Despite being expressly identified as "one of the two accounting firms" that audited Byblos' financial statements (*id.*), BDO Lebanon is not named as a defendant in the Amended Complaint. There are no allegations that BDO USA provided any services to Byblos or had any role in any services BDO Lebanon allegedly provided to Byblos.

Nonetheless, together with five other accounting firms, BDO USA is referred to as one of the "Accounting Defendants." (Am. Compl. at 10–11.)

Additionally, along with EY Global and EY USA, BDO USA is referenced throughout the Amended Complaint as one of the "Byblos Accounting Defendants." (*Id.* ¶ 43.) In Paragraph 66, which discusses the alleged audits of Byblos' financial statements, Plaintiffs appear to refer interchangeably to both the "Byblos Accounting Defendants" and the "Accounting Defendants." The "Byblos Accounting Defendants," Plaintiffs claim, "did not ask questions, and signed off on Byblos's financials for the years ending 2015-18 inclusive." (*Id.* ¶ 66.) Meanwhile, the "Accounting Defendants" allegedly were "woefully negligent in performing their responsibilities as auditors of Byblos." (*Id.*)

Although BDO USA is not alleged to have participated in the Byblos audits, Plaintiffs claim that BDO USA is "liable for the tortious conduct of [its] affiliates in other regions." (*Id.* ¶¶ 201, 208.) Plaintiffs assert that "BDO [is] an integrated international professional firm[] that tout[s]" itself and "operate[s], as a de facto single entit[y]." (*Id.*) On this theory of liability, the Amended Complaint alleges that BDO USA is liable for RICO violations (First Cause of Action), and common law claims for unjust enrichment (Sixth Cause of Action), negligence (Eighth Cause of Action), and aiding and abetting fraud (Ninth Cause of Action) in connection with the Byblos audits.

**LEGAL STANDARD**

To state a claim and avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A complaint that offers only "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do." *Benamax Ice, LLC v. Merch. Mut. Ins. Co.*, 529 F. Supp. 3d 350, 354 (D.N.J. 2021) (quoting *Twombly*, 550 U.S. at 555).

Although courts accept as true the allegations in a complaint, that tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Fowler*, 578 F.3d at 210. In other words, legal conclusions are not given the presumption of truthfulness. *DeJoy v. Comcast Cable Commc'ns, Inc.*, 941 F. Supp. 468, 472 (D.N.J. 1996).

Additionally, "[e]ven under the most liberal notice pleading requirements of Rule 8(a)," a plaintiff cannot resort to group pleading that does not "differentiate between defendants." *Shaw v. Hous. Auth. of Camden*, No. CIV. 11-4291 RMB/AMD, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (dismissing complaint because it did not contain allegations showing how each defendant was

6

liable). Thus, a complaint that "fails to separate out the liability for each defendant" and instead "lumps [d]efendants together as a group and asserts general common factual allegations against all of them" warrants dismissal. *See Sheeran v. Blyth Shipholding S.A.*, No. CV 14-5482 (JBS/AMD), 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015). Vague group pleadings are impermissible under Rule 8 because such allegations fail to inform each defendant of the particular claims against it. *See id.* at *4; *see also Twombly*, 550 U.S. at 555 (explaining that, under Rule 8(a), the complaint must nonetheless "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").

Furthermore, a plaintiff alleging fraud must satisfy the heightened pleading standards of Rule 9(b), which requires that a party "state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). *See DeFazio v. Wells Fargo Bank Nat'l Ass'n*, No. CV 20-375 (SRC), 2020 WL 1888252, at *5 (D.N.J. Apr. 16, 2020) (applying Rule 9(b)'s heightened pleading standard to aiding and abetting claims); *Fed. Nat'l Mortg. Ass'n v. DuBois*, No. CV153787JMVMF, 2019 WL 6522822, at *7 (D.N.J. Dec. 4, 2019) (same). The plaintiff alleging fraud "must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.*, No.

7

09-CV-02921 (DMC), 2010 WL 1032649, at *5 (D.N.J. Mar. 16,

2010) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)); *see also*

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (explaining that to

satisfy the particularity standard, the "plaintiff must plead or allege the date, time

and place of the alleged fraud or otherwise inject precision or some measure of

substantiation into a fraud allegation").

Finally, a court in reviewing a Rule 12(b)(6) motion may consider the facts

alleged in the pleadings, the documents attached thereto as exhibits, and matters of

public record. *See Guidotti v. Legal Helpers Debt Resol.*, 716 F.3d 764, 772 (3d

Cir. 2013). A court may also consider "undisputedly authentic documents if the

complainant's claims are based upon these documents[.]" *Id.* (quoting *Mayer v.

Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

## **ARGUMENT**

## I.   **BDO USA IS NOT LIABLE FOR THE CONDUCT OF BDO LEBANON UNDER A "SINGLE ENTITY" THEORY.**

The Amended Complaint's claims against BDO USA fail at the outset for

the simple reason that Plaintiffs incorrectly conflate two separate and independent

BDO International member firms. To be clear, the Amended Complaint does not

allege that BDO USA committed any wrongdoing: there is no claim that BDO

USA audited Defendant Byblos' financial statements, no accusation that BDO

USA engaged in fraud, and no assertion that BDO USA participated in any

conspiracy. (*See, e.g.*, Am. Compl. ¶ 40 ("BDO's Lebanon affiliate was one of the two accounting firms to audit Byblos' financial statements.").) Rather, Plaintiffs attempt to hold BDO USA responsible for work allegedly performed by BDO Lebanon by relying on the faulty theory that BDO International—of which BDO USA and BDO Lebanon are member firms—"operates, effectively, as a single entity." (Am. Compl. ¶ 40.) As discussed below, Plaintiffs' conclusory allegations fall far short of stating a viable claim, and they certainly do not support a finding that BDO USA is vicariously responsible for audits allegedly performed by a legally distinct accounting firm.

In conflating two BDO International entities, Plaintiffs ask the Court to disregard decades of well-settled federal caselaw recognizing that members of an international network of accounting firms are separate and legally distinct entities that should not be treated as a "single entity." Indeed, "[m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name." *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 CIV.0613 GBD, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004) (dismissing claims against U.S. firm based on audits conducted by a network member firm in Peru). In declining to hold firms vicariously liable for the actions of other member firms in the same accounting network, courts have routinely dismissed as

9

unpersuasive arguments that the network acts as a "worldwide organization." *See Skidmore Energy, Inc. v. KPMG LLP*, No. CIV.A.3:03CV2138-B, 2004 WL 3019097, at *4 (N.D. Tex. Dec. 28, 2004) (finding allegations that KPMG was acting as a "worldwide organization" insufficient as a matter of law to state a claim against KPMG U.S. for the acts of KPMG Morocco).

For example, in *In re Lernout & Hauspie Securities Litigation*, plaintiffs attempted to hold KPMG International vicariously liable for the purported misstatements of KPMG member firms. 230 F. Supp. 2d 152, 171 (D. Mass. 2002). In support of their allegations, plaintiffs pointed to excerpts from KPMG's website and annual shareholder report touting its global services regime. *Id.* at 171–72. In dismissing these arguments, the court opined that KPMG's public relations materials proclaiming firm unity were undercut by its web pages and marketing materials explaining that KPMG International and its member firms were legally separate entities. As the court explained, plaintiffs had not presented "any specific allegations—aside from advertising slogans culled from the Website and Annual Report to Shareholders—that support the inference of an agency relationship." *Id.* at 173. Similarly, in *In re WorldCom, Inc. Securities Litigation*, the court dismissed claims against an accounting entity after finding that plaintiffs' "bare allegations" that the entity was an "umbrella organization for its member firms worldwide" were insufficient to plead that a member firm was acting as the accounting entity's

10

agent when conducting audits. No. 02 Civ. 3288, 2003 WL 21488087, at *10 (S.D.N.Y. June 25, 2003)

The holdings in *Nuevo Mundo Holdings*, *Skidmore*, *In re Lernout & Hauspie Securities Litigation*, and *In re WorldCom, Inc. Securities Litigation* are all consistent with an abundant line of federal caselaw that has firmly rejected the "single entity" or "one firm" theory of accounting firm liability. *See, e.g.*, *Rocker Mgmt., L.L.C v. Lernout & Hauspie Speech Prods. N.V.*, No. CIV.A. 00-5965 (JCL), 2005 WL 1365772, at *7 (D.N.J. June 8, 2005) (dismissing claims against KPMG LLP arising from acts of Belgian member firm and "declin[ing] to adopt" a "one firm theory"); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 570–72 (D.N.J. 2005) (citation and quotations omitted) (dismissing claims against accounting entities because "[i]t is well recognized that [m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name"); *In re NQ Mobile, Inc. Sec. Litig., No. 13CV7608*, 2015 WL 1501461, at *2–3 (S.D.N.Y. Mar. 27, 2015) (rejecting as "conclusory" plaintiffs' allegations that all of the member firms in the PwC network operated with a

common purpose under a single umbrella or that PwC International exerted direct control over the firms in its network).[3]

Like the unsuccessful plaintiffs in this long line of cases, Plaintiffs here offer no viable support for their "single entity" theory. Rather, Plaintiffs merely claim that BDO "touts its international integration and ability to provide professional services in all corners of the globe." (Am. Compl. ¶ 40; *see also id.* ¶¶ 201, 208.) Plaintiffs offer no other support for their theory beyond these threadbare assertions. In fact, the BDO International website makes clear that "[e]ach of . . . the BDO member firms is a separate legal entity and has no liability for another such entity's acts or omissions." BDO Global, Website Terms and Conditions, at https://www.bdo.global/en-gb/website-terms-and-conditions (last visited Nov. 18,

---

[3] *See also Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 577 (S.D.N.Y. 2012) (dismissing claims against Grant Thornton International based on audits allegedly conducted by member firms and holding that reliance on shared use of brand name did not support a showing that Grant Thornton International was the entity that performed audits in question); *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 89-90 (D. Mass. 2002) (dismissing claims against KPMG Singapore based upon the alleged conduct of KPMG Belgium, and noting that the Court had rejected "the theory that all KPMG entities are one worldwide firm or [are] all agents of one another"); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 661–62 (S.D.N.Y. 1997) (dismissing allegations that foreign member firms were a legal partnership on the basis of "public relations materials suggest[ing that KPMG] is a global firm or an international network of member firms"); *In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (dismissing claims against foreign affiliates of PwC and rejecting plaintiffs' theory that "all the Price Waterhouse firms world-wide are in fact one entity, and acted as agents of one another").

2024). Additionally, BDO USA's website discloses that BDO USA is the "U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of *independent member firms*." BDO USA Website, at https://www.bdo.com (last visited Nov. 18, 2024) (emphasis added).[4] Aside from membership in BDO International, Plaintiffs allege no connection between BDO USA and BDO Lebanon, which are plainly legally independent entities.

Plaintiffs' claims are thus insufficient to support a finding that the alleged conduct of BDO Lebanon should be attributed to BDO USA. Plaintiffs have failed to provide any legal basis or well-pleaded allegations that BDO USA and BDO Lebanon are a "single entity." BDO USA is not responsible for the alleged conduct of BDO Lebanon, and because Plaintiffs' claims against BDO USA are based solely on a single-entity theory, they must be dismissed.[5]

---

[4] The Court may take judicial notice of BDO International's and BDO USA's websites as matters of public record. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

[5] Plaintiffs also make no allegation that the Court should disregard the corporate legal status of BDO USA, a Virginia corporation, such that it should be held liable for the actions of another BDO International member firm. Plaintiffs, for example, have not alleged that BDO USA and BDO Lebanon are a joint enterprise or are alter egos of one another such that BDO USA's corporate veil should be pierced. *See Shandong Reltex Leihua Co. v. Ison Int'l LLC*, No. 2:22-CV-57, 2023 WL 5662563, at *4 (E.D. Va. Aug. 31, 2023) (explaining that Virginia courts "have a strong policy in favor of recognizing the corporate entity as separate and distinct from its members").

## II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST BDO USA.

### A.    Plaintiffs Have Not Stated a RICO Claim (First Cause of Action).

Plaintiffs assert a claim for violations of Sections 1962(c) and (d) of the

Racketeer Influenced and Corrupt Organizations Act ("RICO") against "all

Defendants." (Compl. ¶ 117.) Plaintiffs are required to plead their RICO claim

with particularity under Rule 9(b). *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir.

2004) ("Where, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO

violation, the allegations of fraud must comply with Federal Rule of Civil

Procedure 9(b), which requires that allegations of fraud be pled with specificity.").

As discussed below, the Amended Complaint fails to state a RICO claim against

BDO USA for several reasons.[6]

---

[6] Plaintiffs also do not allege that they have Article III and RICO standing to assert claims under Sections 1962(c) or (d). First, Plaintiffs fail to plead Article III standing because the Amended Complaint does not allege facts that plausibly show Plaintiffs' injury is "fairly traceable to [defendants'] alleged wrongful conduct." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 246 (3d Cir. 2012). Second, Plaintiffs do not plead statutory standing to bring a RICO claim because they do not allege facts plausibly showing that "the defendant's violation [of 18 U.S.C. § 1962] not only was a 'but for' cause of [plaintiffs'] injury, but was the proximate cause as well." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Here, Plaintiffs have not shown any causal connection between any of BDO USA's alleged conduct and Plaintiffs' purported harm because BDO USA is not alleged to have done *anything*. *See supra* Section I. Additionally, Plaintiffs have failed to allege that BDO Lebanon's conduct caused Plaintiffs' alleged harm. *See infra* Section III.

14

1.    <u>Plaintiffs fail to state a claim under Section 1962(c).</u>

Under 18 U.S.C. § 1962(c), liability is imposed on persons who "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Thus, to state a claim under Section 1962(c), Plaintiffs must plead factual allegations sufficient to show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 518–19 (D.N.J. 2011). "Racketeering activity" is "any act which is indictable" under those offenses specifically enumerated within the RICO statute, which includes violations of the federal mail and wire fraud statutes, and a "pattern" is established by two or more acts of racketeering within ten years. 18 U.S.C. § 1961(1) (listing 18 U.S.C. §§ 1341 & 1343).

In an attempt to establish a pattern of racketeering, Plaintiffs allege wire fraud, mail fraud, and money laundering. (Am. Compl. ¶ 126(a)–(c).) The Amended Complaint, however, fails to establish that BDO USA engaged in any racketeering activity, let alone that BDO USA conducted or directed the alleged enterprise. Instead, Plaintiffs' RICO allegations against BDO USA appear to rest on the notion that the "Byblos Accounting Defendants provided substantial assistance to Byblos in its fraudulent scheme to inflate its own financials, and Byblos' participation in BDL's fraudulent scheme to entice depositors." (Am.

15

Compl. ¶ 66.) Such allegations do not qualify as "conducting" the affairs of the enterprise. In *Reves v. Ernst & Young*, the Supreme Court curtailed the reach of Section 1962(c), holding that liability can only attach to those who "participate in the ***operation or management*** of the enterprise itself." 507 U.S. 170, 185 (1993) (emphasis added). The Court determined that the term "conduct" required at least "*some* part in directing the enterprise's affairs." *Id.* at 179 (emphasis in original). *See also Dongelewicz v. PNC Bank Nat'l Ass'n*, 104 F. App'x 811, 81 (3d Cir. 2004) (holding that the defendant was "merely a lender" that "supplied financing for a development that failed," and "[s]uch involvement does not support a finding that it 'conducted' the affairs of any 'enterprise' under *Reves*"); *Digital Wholesale of New York, LLC v. Am. Eagle Trading Grp., LLC*, No. 16-3487, 2016 WL 5660462, at *4 (D.N.J. Sept. 29, 2016) (holding that allegations that the defendants "knew or should have known about [co-defendant's] alleged criminal activities, worked in conjunction with [co-defendant], and participated in [co-defendant's crime]" could not establish RICO claim).

Additionally, providing goods or services—including audit services—is insufficient to establish RICO liability. *See Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538–41 (3d Cir. 1993) (finding that "merely performing financial services," specifically audits, did "not show that Peat Marwick was participating in the affairs of the enterprise") (citing *Reves*, 507 U.S.

16

at 178–79); *Indus. Bank of Latvia v. Baltic Fin. Corp.*, No. 93 CIV. 9032 (LLS), 1994 WL 286162, at \*3 (S.D.N.Y. June 27, 1994) (holding that providing banking services, "even with knowledge of the fraud—is not enough to state a claim under § 1962(c)"). And, as noted above, Plaintiffs do not allege that BDO USA provided any audit services to any Lebanese bank.

Moreover, Plaintiffs have failed to plead with particularity how BDO USA was allegedly engaged in any racketeering activity or enterprise. Rather, Plaintiffs impermissibly lump all of the Defendants together to claim a RICO conspiracy without any specific allegations as to BDO USA's misconduct. *See Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J. 2011) (dismissing RICO claims because "[e]ven assuming that the defendants engaged in wrongdoing, Plaintiff lumps all three defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions"). Plaintiffs' conclusory allegations do not come close to meeting the burden of plausibly alleging that BDO USA engaged in racketeering activity, either directly or through aiding and abetting, whether under Rule 9(b)'s heightened pleading standard or otherwise. *Livingston v. Shore Slurry Seal, Inc.*, 98 F. Supp. 2d 594, 597 (D.N.J. 2000) ("Claims of mail and wire fraud which support an alleged RICO violation must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).").

17

2.    <u>Plaintiffs fail to state a claim under Section 1962(d).</u>

Plaintiffs fail to state a claim for conspiracy to violate RICO under Section 1962(d). First, because Plaintiffs fail to allege a substantive violation of the underlying RICO claim under 1962(c), the RICO conspiracy claim also fails. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

Second, to state a claim under Section 1962(d), Plaintiffs must allege: "(1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were a part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)." *Grant v. Turner*, No. CIV.A 09-2381 (JAG), 2010 WL 988537, at *11 (D.N.J. Mar. 12, 2010) (internal citations omitted). Here, Plaintiffs have not shown that BDO USA was party to any purported agreement— or indeed that any such agreement existed. Nor have Plaintiffs demonstrated that BDO USA had knowledge of any alleged racketeering activity, any alleged acts to achieve the purpose of a supposed conspiracy, or that any alleged acts were "part of a pattern of racketeering activity." *See Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166–67 (3d Cir. 1989) (*abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000)) (explaining that to adequately plead a civil RICO conspiracy

18

claim, the plaintiff must set forth allegations addressing "certain actions of the alleged conspirators taken to achieve th[e] purpose" of the conspiracy"); *Lento v. Altman*, No. CV 22-4840 (RBK/EAP), 2023 WL 4232158, at *6 (D.N.J. June 27, 2023) (dismissing RICO conspiracy claim where the complaint failed to "allege anything remotely close to actions [the defendants] took to achieve the alleged conspiracy's purpose").

### B.    Plaintiffs' Unjust Enrichment Claim Fails (Sixth Cause of Action).

To state a claim for unjust enrichment, Plaintiffs must show (1) a direct relationship between the parties, (2) that a plaintiff has conferred a direct benefit on the defendant, and (3) that the defendant's retention of that benefit would be unjust. *See Willekes v. Serengeti Trading Co.*, No. CV137498ESMAH, 2016 WL 5334522, at *14 (D.N.J. Sept. 22, 2016) (citations omitted).[7] Plaintiffs have failed

---

[7] To the extent the unjust enrichment and negligence causes of action sound in fraud, Plaintiffs are required to plead these claims with particularity. *See Crete v. Resort Condominiums Int'l, LLC*, No. CIV.A. 09-5665, 2011 WL 666039, at *5 (D.N.J. Feb. 14, 2011) (explaining that a party alleging unjust enrichment must state the fraudulent acts underlying the unjust enrichment claim with the 'particularity' required by Rule 9(b)"); *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) (explaining that plaintiffs' claims alleging fraudulent activity, including those for unjust enrichment and negligent misrepresentation, "must be pled with sufficient particularity under Rule 9(b)").

to make the showing required to plead an unjust enrichment claim against BDO USA.

First, Plaintiffs have not alleged any direct relationship with BDO USA. The Amended Complaint alleges a relationship only between BDO Lebanon and Defendant Byblos. (*See* Am. Compl. ¶ 40 ("BDO's Lebanon affiliate was one of the two accounting firms to audit Byblos' financial statements.").) Absent a direct relationship, Plaintiffs cannot maintain an unjust enrichment claim. *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 459–60 (D.N.J. 2012) (explaining that New Jersey law requires a plaintiff to have conferred a direct benefit on the defendant, as well as privity between the parties, to establish an unjust enrichment claim); *MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 442 (D.N.J. 2012) (dismissing unjust enrichment claim where the plaintiff did not allege it had a direct relationship with the defendants or that it conferred any benefit directly on them).

Moreover, Plaintiffs make no claim that they provided any benefit or paid anything to BDO USA, nor that they expected renumeration from BDO USA in a personal capacity. In fact, Plaintiffs make no allegation that BDO USA retained *any* unjust benefit whatsoever, and instead only include vague allegations that BDO Lebanon retained "professional fees and other remuneration received for their work." (Am. Compl. ¶ 188.) Notably, the Amended Complaint lacks any

claims that BDO Lebanon shared any alleged "professional fees" or "other renumeration" with BDO USA. *See Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 704 (E.D. Pa. 1973) (dismissing unjust enrichment claim where defendant never received any money from the plaintiff).

Plaintiffs' allegations are insufficient to plead an unjust enrichment claim against BDO USA.

### C.    Plaintiffs' Negligence Claim Fails (Eighth Cause of Action).

To state a claim for negligence, a plaintiff must allege "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." *Willekes*, 2016 WL 5334522, at *15 (quoting *Fernandes v. DAR Dev. Corp.*, 119 A.3d 878, 885–86 (N.J. 2015) (dismissing negligence claims where plaintiffs failed to allege a duty of care on the part of defendants where no relationship existed between the parties and where defendants had no reason to foresee any risk of harm flowing to plaintiffs). Plaintiffs have not adequately alleged *any* of these elements against BDO USA.

First, Plaintiffs have not alleged that BDO USA owed them a duty. Plaintiffs' negligence claim is barred by N.J.S.A. § 2A:53A-25(b), which sets forth the parameters for accountant liability under New Jersey law. The statute provides that an accountant cannot be held liable to a third party for "damages for negligence" unless the third party establishes that the accountant:

- "(a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;

- (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and

- (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service[.]"

N.J.S.A. § 2A:53A-25(b) (2004). In enacting the statute, the New Jersey legislature expressly limited non-client claims against accountants with the specific purpose of restoring the concept of privity to accountants' liability to third parties. *See E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 179 N.J. 500, 504 (2004).

In *E. Dickerson*, the New Jersey Supreme Court upheld dismissal of an auditor negligent misrepresentation claim under N.J.S.A. § 2A:53A-25(b) after determining that the plaintiffs (i) were not clients of the accounting firm and (ii) had failed to establish that the accounting firm knew that the claimant intended to rely on its audit or expressed any understanding of that intended reliance. *Id.* at 503. The lower court in *E. Dickerson* explained that "[t]here can be no liability

unless [the claimant alleges that] the accountant used words or conduct directly expressed to the claimant, which establish the accountant's understanding of the claimant's intended reliance on his work." *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 361 N.J. Super. 362, 368 (App. Div. 2003), *aff'd*, 179 N.J. 500 (2004) (holding that plaintiffs' claims for negligence failed because they were never identified as possible claimants and the complaint did not "contain any language even suggesting that defendant provided any expression directly to plaintiffs, let alone one reflecting an understanding that they intended to rely on the audits"); *see also Cast Art Indus., LLC v. KPMG LLP*, 209 N.J. 208, 227 (2012) (holding that defendant was entitled to judgment where plaintiff failed to establish that defendant accounting firm knew at time of the engagement, or thereafter agreed, that the non-client plaintiff would rely on its work); *Pasqua v. Cnty. of Hunterdon*, No. CV14-4203FLWTJB, 2016 WL 4253958, at *17–18 (D.N.J. Aug. 11, 2016) (finding that non-client third party plaintiffs could not state a claim for negligence because they failed to allege necessary conditions under N.J.S.A. § 2A:53A-25(b), including that defendant accounting firm knew that plaintiffs intended to rely upon firm's services and directly expressed such knowledge to plaintiffs).

The Amended Complaint does not allege privity between Plaintiffs and BDO USA. Plaintiffs do not claim to be, and were not, clients of BDO USA (or any other BDO International entity). Plaintiffs do not allege that BDO USA, or any

23

other BDO International entity, issued any audit report specifically to any Plaintiff or even knew of the existence of any particular Plaintiff. Plaintiffs satisfy none of the three elements of § 2A:53A-25(b).

Furthermore, Plaintiffs have failed to plead the requisite facts to support any of the other elements of their negligence claim against BDO USA. Plaintiffs do not allege a breach of duty by BDO USA, as Plaintiffs do not point to any audit conducted by BDO USA, much less allege that it failed to comply with applicable professional standards. Plaintiffs do not allege actual and proximate causation or recoverable damages, as they make no effort to point to any conduct by BDO USA that purportedly caused the loss of their deposits in Lebanese banks.

### D. Plaintiffs Have Failed to Plead a Viable Aiding and Abetting Fraud Claim (Ninth Cause of Action).

To plead a claim for aiding and abetting fraud, a plaintiff must demonstrate: (1) the underlying fraud; (2) the defendant's knowledge of the fraud; and (3) substantial assistance or encouragement by the defendant in the fraud. *Bachner + Co., Inc. v. White Rose Food, Inc.*, No. CIV.A. 09-2640 PGS, 2010 WL 3210689, at *6 (D.N.J. Aug. 11, 2010) (citing *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998)). The claim must be pleaded with particularity—that is, the plaintiff must offer more than conclusory allegations or a "formulaic recitation of the elements of a cause of action." *Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 616 (D.N.J. 2014) (dismissing claim for aiding and

abetting common law fraud where it was "not at all clear who did what to aid and abet" the fraud based on the allegations in the complaint).

Plaintiffs plead no facts showing that BDO USA offered substantial assistance to or had actual knowledge of any purported conspiracy. And insofar as Plaintiffs assert that BDO USA aided and abetted Defendant Byblos' fraud, they certainly have not done so with the particularity required by Rule 9(b). Plaintiffs have not shown, for example, "what was communicated to" BDO USA, "when and how" any alleged communications took place, or "who was involved" in any alleged collections. *See DeFazio v. Wells Fargo Bank Nat'l Ass'n*, No. CV 20-375 (SRC), 2020 WL 1888252, at *5 (D.N.J. Apr. 16, 2020) (holding that claim for aiding and abetting fraud did not meet either the plausibility standard of Rule 8 nor Rule 9(b)'s heightened pleading standard where complaint failed to plead specifics regarding communications).

Similarly, the Amended Complaint lacks factual allegations regarding BDO USA's knowledge that it was participating in or facilitating a fraud. The Amended Complaint states only that "BDO . . . knew that Byblos' misrepresentations were designed to induce the depositors to deposit and maintain dollar deposits at Byblos." (*Id.* ¶ 207.) The Amended Complaint does not state how BDO USA allegedly came by this knowledge, nor does it allege that BDO USA had any communications with Defendant Byblos that would support BDO USA having

such knowledge. In short, Plaintiffs' claims amount to nothing more than bald assertions and legal conclusions that deserve no credence. *See Iqbal*, 556 U.S. at 678 (finding that conclusory allegations consisting of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice to withstand a Rule 12(b)(6) motion to dismiss); *Twombly*, 550 U.S. at 555 (finding that "a formulaic recitation of the elements of a cause of action will not do"). Thus, Plaintiffs' aiding and abetting fraud claim against BDO USA fails.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST NON-PARTY BDO LEBANON.

Even assuming *arguendo* that BDO USA is liable for the conduct of BDO Lebanon (which it is not), Plaintiffs' claims must be dismissed for failure to state viable claims against *any* BDO International member firm, including BDO Lebanon. As discussed above with respect to the claims against BDO USA, the Amended Complaint fails to state a claim against BDO Lebanon in key respects.

*First*, Plaintiffs do not allege that BDO Lebanon played a role in conducting or directing the alleged RICO "enterprise." As discussed above, providing services, including audit services, is insufficient to establish racketeering activity under Section 1962(c). *See Reves*, 507 U.S. at 185. Nor have Plaintiffs established that BDO Lebanon conspired to violate RICO under Section 1962(d). *See Grant*, 2010 WL 988537, at *11.

26

*Second*, Plaintiffs have failed to state a claim for unjust enrichment against BDO Lebanon. Plaintiffs have not alleged that they had a direct relationship with BDO Lebanon, that they provided any benefit or paid BDO Lebanon anything, or that BDO Lebanon was enriched at their expense. *Willekes*, 2016 WL 5334522, at *14. Indeed, the only relationship Plaintiffs allege is between BDO Lebanon and Defendant Byblos. (*See* Am. Compl. ¶ 40.)

*Third*, Plaintiffs have failed to adequately plead elements of negligence, including privity and causation, against BDO Lebanon. Plaintiffs do not claim to be clients of BDO Lebanon. They also do not plead facts alleging that BDO Lebanon knew Plaintiffs intended to rely on the alleged audits, or, indeed, that the firm even knew of the existence of any Plaintiff. Plaintiffs have not plausibly alleged that BDO Lebanon performed negligent audits or caused Plaintiffs' harm.

*Finally*, Plaintiffs fail to allege facts sufficient to show that BDO Lebanon aided and abetted any fraud by Byblos. Plaintiffs have pled only conclusory allegations about BDO Lebanon's supposed substantial assistance in and knowledge of the alleged conspiracy, and Plaintiffs have certainly not pled these allegations with the particularity required by Rule 9(b). Plaintiffs do not allege, for example, that BDO Lebanon had any fraudulent intent, nor the motive and opportunity to commit fraud. *See e.g.*, *Nappier v. Pricewaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 275 (D.N.J. 2002) (explaining that plaintiffs must allege that

27

the auditor's conduct is "highly unreasonable, representing an extreme departure from the standards of ordinary care [and] must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company"). Indeed, as Plaintiffs themselves claim, the Byblos Accounting Defendants ultimately issued an "adverse opinion" for the audits for the years ending 2019 through 2022, "noting that they could not concur with the financial statements issued by Byblos." (Am. Compl. ¶ 94.) Additionally, Plaintiffs' allegation that BDO Lebanon had "full access to Byblos' books and records," (*id.* ¶ 95), similarly fails to support an aiding and abetting claim. *See In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 360 (W.D. Tenn. 2001) (finding that accountants' access to "contracts and documents that allegedly revealed improper revenue recognition" was not sufficient to permit strong inference of scienter).

Thus, Plaintiffs have failed to state a claim against *any* BDO International member firm, including BDO Lebanon.

## **CONCLUSION**

For the foregoing reasons, BDO USA respectfully requests that the Court grant its motion to dismiss the Amended Complaint as to BDO USA with prejudice.

28

Dated: November 26, 2024          Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By: */s/ David Kiefer*
David Kiefer
Gregory G. Ballard (admitted *pro hac vice*)
Fabiola Vega (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
dkiefer@mwe.com
gballard@mwe.com
fvega@mwe.com

*Attorneys for BDO USA, P.C.*