Michael J. Dell (admitted *pro hac vice*)
Tobias B. Jacoby (admitted *pro hac vice*)
Boaz I. Cohen (N.J. Bar No. 177762015)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100
mdell@kramerlevin.com
tjacoby@kramerlevin.com
bcohen@kramerlevin.com

*Attorneys for Defendants*
*Deloitte LLP and Deloitte & Touche LLP*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARIM P. NAJJAR, *et al.*, individually and behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>RIAD SALAMEH, *et al.*,<br><br>        Defendants. | Civil Action No. 1:24-cv-05043-CPO-EAP<br><br>Hon. Christine P. O'Hearn, U.S.D.J.<br><br>Hon. Elizabeth A. Pascal, U.S.M.J.<br><br>**Motion Date: March 17, 2025**<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
## DEFENDANTS DELOITTE LLP AND DELOITTE & TOUCHE LLP
## TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

PLAINTIFFS' ALLEGATIONS ..............................................................................................3

    A.    The alleged "Lebanese Banking Enterprise" ...........................................3

    B.    Deloitte LLP and D&T LLP ...................................................................4

    C.    Deloitte Lebanon .....................................................................................5

PROCEDURAL HISTORY .......................................................................................................6

ARGUMENT ............................................................................................................................7

I.    THE FAC FAILS TO STATE A CLAIM THAT DELOITTE LLP AND D&T LLP ARE DIRECTLY OR INDIRECTLY LIABLE FOR PLAINTIFFS' PURPORTED INJURIES .........................................................................7

II.    THE FAC FAILS TO STATE A RICO CLAIM OR A COMMON LAW CLAIM .........10

    A.    The FAC fails to state a RICO claim against "Deloitte USA" or Deloitte Lebanon .........................................................................10

        1.    The FAC does not plausibly allege that Plaintiffs have Article III and RICO standing to assert claims under 18 U.S.C. §§ 1962(c) or (d) ....................................................11

        2.    The FAC fails to state a claim under 18 U.S.C. § 1962(c) ......................13

            a.    The FAC fails to allege that "Deloitte USA" or Deloitte Lebanon "conduct[ed] or participate[d]" in the purported RICO enterprise ......................................13

            b.    The FAC does not allege that "Deloitte USA" or Deloitte Lebanon participated in two or more predicate acts that constitute a pattern ........................................................15

        3.    The FAC fails to allege a conspiracy claim under 18 U.S.C. § 1962(d) ................................................................18

    B.    The FAC fails to state common law claims against "Deloitte USA" or Deloitte Lebanon .........................................................................22

        1.    The FAC fails to state a claim for unjust enrichment ...............................22

        2.    The FAC fails to state a claim for negligence ...........................................24

        3.    The FAC fails to state a claim for aiding and abetting fraud ....................28

CONCLUSION ........................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aegean Marine Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)..................................................................................9 n.5

*Ajayi v. Cula, LLC*,
    2024 WL 2105557 (D.N.J. May 9, 2024) ........................................................................ 22-23

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
    228 F.3d 429 (3d Cir. 2000)..........................................................................................12

*Amos v. Franklin Fin. Servs. Corp.*,
    509 F. App'x 165 (3d Cir. 2013) ...................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................................7

*Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983).......................................................................................................12

*ATR Paper, Inc. v. Bangkit (U.S.A.), Inc.*,
    2024 WL 3518119 (D.N.J. July 24, 2024)................................................................14, 16

*Bohorquez v. Piraquive*,
    2018 WL 11421491 (D.N.J. Apr. 2, 2018) ...................................................................13

*Brouwer v. Raffensperger, Hughes & Co.*,
    199 F.3d 961 (7th Cir. 2000) .........................................................................................21

*Budet v. Rutgers Bus. Sch.*,
    2024 WL 3371408 (D.N.J. July 11, 2024).......................................................................7

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997).....................................................................................5 n.4

*Capers v. FedEx Ground*,
    2012 WL 2050247 (D.N.J. June 6, 2012)............................................................13, 15, 19

*Cast Art Indus., LLC v. KPMG LLP*,
    209 N.J. 208 (2012) .......................................................................................................24

*Celularity Inc. v. Evolution Biologyx, LLC*,
    2024 WL 489684 (D.N.J. Feb. 8, 2024) .....................................................................10 n.6

*Cheng v. Byrd*,
    2024 WL 3873945 (D.N.J. Aug. 20, 2024) ...................................................................14

KL3 3726394.1

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube LLC*,
    2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ....................................................10 n.6

*Contel Global Marketing, Inc. v. Dreifuss*,
    2010 WL 374946 (N.J. App. Div. Feb. 4, 2010) ....................................................28

*Craig v. Lake Asbestos of Quebec, Ltd.*,
    843 F.2d 145 (3d Cir. 1988)........................................................................10 n.6

*Crete v. Resort Condos. Int'l, LLC*,
    2011 WL 666039 (D.N.J. Feb. 14, 2011) .............................................................13

*DeFazio v. Wells Fargo Bank N.A.*,
    2020 WL 1888252 (D.N.J. Apr. 16, 2020) ..................................................... *passim*

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    784 F. Supp. 2d 508 (D.N.J. 2011) .....................................................................11

*Duldulao v. La Creperia Café, Inc.*,
    2011 WL 6840585 (M.D. Fla. Dec. 29, 2011)....................................................17 n.7

*E. Dickerson & Son, Inc. v. Ernst & Young, LLP*,
    179 N.J. 500 (2004) .................................................................................24, 26

*E. Dickerson & Son, Inc. v. Ernst & Young, LLP*,
    361 N.J. Super. 362 (App. Div. 2003) ..................................................................24

*Estate of Moore v. Cumberland Cnty.*,
    2018 WL 1203470 (D.N.J. Mar. 8, 2018)..............................................................26

*Gibly v. Best Buy Co.*,
    2022 WL 16637916 (D.N.J. Nov. 2, 2022) ............................................................29

*Giovinazzo v. DeAngelo*,
    2022 WL 795713 (D.N.J. Mar. 16, 2022)..........................................................16, 23

*Graddy v. Deutsche Bank Trust Co.*,
    2012 WL 762246 (D.N.J. Mar. 6, 2012)................................................................26

*Himmel v. Wunderwein LLC*,
    2024 WL 2933257 (D.N.J. June 11, 2024) ............................................................23

*Hollis-Arrington v. PHH Mortg. Corp.*,
    205 F. App'x 48 (3d Cir. 2006) ...................................................................... 15-16

*Holmes v. SIPC*,
    503 U.S. 258 (1992)...................................................................................11

*Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*,
    2010 WL 1287058 (E.D. Wis. Mar. 20, 2010) ...............................................................17 n.7

*Katz v. Ambit Northeast, LLC*,
    2023 WL 2570147 (D.N.J. Mar. 20, 2023)...............................................................................23

*Kornea v. J.S.D. Mgm't, Inc.*,
    366 F. Supp. 3d 660 (E.D. Pa. 2019) ......................................................................................16

*LCA GP LLC v. City of Plainfield*,
    2018 WL 11587954 (D.N.J. July 13, 2018)............................................................................26

*Lento v. Altman*,
    2023 WL 4232158 (D.N.J. June 27, 2023) .............................................................................19

*In re Lernout & Hauspie Sec. Litig.*,
    230 F. Supp. 2d 152 (D. Mass. 2002) ...........................................................................9 n.5, 10

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004)...............................................................................................7, 18

*Moriarty v. Classic Auto Grp., Inc.*,
    2014 WL 884761 (D.N.J. Mar. 6, 2014) ...............................................................................10

*Nappier v. PricewaterhouseCoopers, LLP*,
    227 F. Supp. 2d 263 (D.N.J. 2002) ........................................................................................20

*Northwestern Human Servs., Inc. v. Panacio*,
    2005 WL 1353609 (E.D. Pa. June 6, 2005)......................................................................18, 21

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
    2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) .................................................................9 n.5, 22

*Nype v. Spitz*,
    2022 WL 329321 (D.N.J. Feb. 3, 2022) ................................................................................24

*Pappalardo v. Combat Sports, Inc.*,
    2011 WL 6756949 (D.N.J. Dec. 23, 2011).............................................................................23

*Pasqua v. County of Hunterdon*,
    2016 WL 4253958 (D.N.J. Aug. 11, 2016) ................................................................24, 25, 26

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)......................................................................................................13, 15

*Rocker Management L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*,
    2005 WL 1365772 (D.N.J. June 8, 2005) ...............................................................................8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004) ..................................................8, 9

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    2006 WL 2355402 (D.N.J. Aug. 14, 2006) ........................................8

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    380 F. Supp. 2d 509 (D.N.J. 2005) ..............................................2, 8, 9

*Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*,
    2024 WL 658263 (D.N.J. Feb. 16, 2024) .....................................18, 19

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012) .............................................................11

*Skidmore Energy, Inc. v. KPMG LLP*,
    2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) ...............................9 n.5

*Smith v. Berg*,
    247 F.3d 532 (3d Cir. 2001) ........................................................18, 20

*Snyder v. Dietz & Watson, Inc.*,
    837 F. Supp. 2d 428 (D.N.J. 2011) ...............................7, 13, 16, 18

*State Dep't of Envtl. Prot. v. Ventron, Corp.*,
    94 N.J. 473 (1983) ......................................................................10 n.6

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) .............................................................12

*Stevenson v. Thornburgh*,
    2024 WL 645187 (S.D.N.Y. Feb. 14, 2024) ...........................7, 9 n.5, 11

*Univ. of Md. v. Peat, Marwick, Main & Co.*,
    996 F.2d 1534 (3d Cir. 1993) .............................................. 13-14, 15, 20

*Zavala v. Wal Mart Stores Inc.*,
    691 F.3d 527 (3d Cir. 2012) .............................................................18

**Statutes & Rules**

18 U.S.C. § 1962(c) ................................................................... *passim*

18 U.S.C. § 1962(d) ................................................................... *passim*

Fed. R. Civ. P. 8(a) ................................................................... *passim*

Fed. R. Civ. P. 9(b) ................................................................... *passim*

Fed. R. Civ. P. 12(b)(1)..............................................................................................1

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 7

N.J.S.A. 2A:53A-25(a)(4).........................................................................................24

N.J.S.A. 2A:53A-25(b).............................................................................................24

KL3 3726394.1

Defendants Deloitte LLP and Deloitte & Touche LLP ("D&T LLP") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), and 12(b)(6).

## PRELIMINARY STATEMENT

The FAC alleges that defendants Banque du Liban ("BdL"), the central bank of Lebanon; BdL's former governor Riad Salameh, a Lebanese resident; and numerous commercial banks in Lebanon (the "Lebanese Banks") conspired to fraudulently induce the named Plaintiffs and others of Lebanese descent in the U.S. to deposit U.S. dollars with the Lebanese Banks, and then refused to let them withdraw their deposits. Plaintiffs call this the "Lebanese Banking Enterprise."

The claims Plaintiffs assert against defendants Deloitte LLP and D&T LLP—two separate legal entities that Plaintiffs lump together as "Deloitte USA" and admit are organized under Delaware law with principal places of business in New York—are frivolous and should be dismissed for several reasons.

*First,* Plaintiffs do not allege that "Deloitte USA" had anything whatsoever to do with the alleged Lebanese Banking Enterprise.

*Second,* Plaintiffs do not allege any facts that show "Deloitte USA" is liable for anyone else's alleged involvement in the Lebanese Banking Enterprise.

In particular, Plaintiffs allege that "Deloitte USA" is a member, and defendant Deloitte Touche Tohmatsu Limited ("DTTL"), a U.K. company based in London, is the "parent" of a "multinational consortium of professional services firms known as 'Deloitte'" that "touts" itself and "operate[s]" as a "de facto single entity." Plaintiffs assert that this somehow makes "Deloitte USA" liable for the audits of BdL's financial statements conducted by a Lebanese affiliate of "Deloitte" ("Deloitte Lebanon") that plaintiffs allege were negligent, even though Plaintiffs do

not allege "Deloitte USA" had anything whatsoever to do with the audits.

Plaintiffs' threadbare, conclusory allegations are utterly insufficient. Federal courts in this District and elsewhere have repeatedly dismissed similar claims based on exactly the kind of unsupported allegations that Plaintiffs make here. *See, e.g.*, *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 570-72 (D.N.J. 2005). Moreover, Plaintiffs' allegations are contradicted by DTTL's and Deloitte LLP's explanation of themselves and their relationship on their public websites.

*Third,* Plaintiffs do not plead the elements of the federal RICO claim and the three common law claims they assert against Deloitte LLP and D&T LLP.

Plaintiffs' RICO claim is deficient because the FAC fails to allege facts that show "Deloitte USA" did anything. The FAC also fails to allege facts that show Deloitte Lebanon's audits were the actual and proximate cause of Plaintiffs' alleged injuries, which is required for standing under Article III and RICO. In addition, Plaintiffs fail to allege facts that show "Deloitte USA" or Deloitte Lebanon directed the alleged RICO enterprise and committed two predicate acts of racketeering, as required by 18 U.S.C. § 1962(c), or entered into an agreement and knowingly facilitated a scheme that was specifically designed to violate RICO, as required by 18 U.S.C. § 1962(d).

Plaintiffs fail to plead an unjust enrichment claim because, among other things, they fail to allege a direct relationship between Plaintiffs and "Deloitte USA" or Deloitte Lebanon in which Plaintiffs conferred a benefit and expected remuneration in return. Plaintiffs fail to plead a negligence claim because, among other things, they fail to allege facts that satisfy the statutory requirements to establish privity. For example, they fail to plausibly allege that "Deloitte USA" or Deloitte Lebanon knew and directly expressed to Plaintiffs that Plaintiffs would rely on

Deloitte Lebanon's audits. Finally, Plaintiffs fail to plead an aiding and abetting fraud claim because, among other things, they fail to allege an underlying fraud and that "Deloitte USA" or Deloitte Lebanon knowingly and substantially assisted the fraud.

In short, Plaintiffs' claims against "Deloitte USA" are a completely meritless attempt to unfairly obtain damages from U.S. defendants that had nothing to do with an alleged fraud in Lebanon that was allegedly perpetrated by Lebanese banks and Lebanese bankers. Because Plaintiffs have already taken an opportunity to amend, and any further amendment would be futile for all of these reasons, the Court should dismiss the claims against Deloitte LLP and D&T LLP with prejudice.

**PLAINTIFFS' ALLEGATIONS**[1]

### A.     The alleged "Lebanese Banking Enterprise"

The FAC alleges BdL and the Lebanese Banks needed an influx of U.S. dollars to "cover up and delay" an "impending" "liquidity crisis" resulting from "unsustainable" high interest rates that the Lebanese Banks had been offering since "the 1990s." (¶¶ 48, 54, 57-58).[2] Plaintiffs allege BdL "orchestrated" a fraudulent conspiracy with the Lebanese Banks, which the FAC titles the "Lebanese Banking Enterprise," to obtain the U.S. dollars. (¶ 14). According to the FAC, between 2016 and 2019 the Lebanese Banks, by offering high interest rates, induced Plaintiffs to deposit U.S. dollars with the Lebanese Banks and to convert some or all of those deposits into Lebanese Lira. (¶¶ 8, 17-26, 54, 69). The FAC alleges that in "late 2019" the Lebanese Banks refused to allow Plaintiffs to withdraw their deposits, or induced them to refrain

---

[1] This summary is drawn from the FAC and documents it incorporates.

[2] "¶ _" refers to paragraphs of the FAC. (ECF Doc. No. 3). "Ex. _" refers to exhibits to the declaration of Boaz I. Cohen, dated November 26, 2024. All emphasis in quoted materials has been added and all internal quotes and citations removed, except where otherwise noted.

from making withdrawals. (¶¶ 22, 73, 77, 89, 159). Plaintiffs allege the Lebanese financial system later "collapse[d]" and the collapse became "public knowledge … in early 2020." (¶ 95).

**B.    Deloitte LLP and D&T LLP**

The FAC alleges Deloitte LLP and D&T LLP are "Delaware limited liability partnerships with their principal place of business in New York." (¶ 41). It refers to them together as "Deloitte USA," the "United States member firm," and to DTTL as "the parent," of a purported "multinational consortium of professional services firms known as 'Deloitte.'" (*Id.*). The FAC does not allege "Deloitte USA" did or failed to do anything at all, let alone anything related to the "Lebanese Banking Enterprise."

The FAC makes the conclusory and entirely unsupported and unparticularized allegation that "Deloitte's Lebanon affiliate" was negligent in its audits of BdL's financial statements. (¶¶ 41, 97). Plaintiffs allege Deloitte LLP and D&T LLP are "liable for the tortious conduct of their affiliates in other regions" because "Deloitte" purportedly "tout[s itself], and operate[s] as a de facto single entity." (¶¶ 217, 224).

The FAC does not allege any facts that support its conclusory allegation that "Deloitte operates, effectively, as a single entity." (¶ 41). Far from "tout[ing]" that "Deloitte" is a "de facto single entity" (¶¶ 217, 224), DTTL's website states the opposite: Deloitte member firms "are separate and independent firms that have come together as a network to practice under a common brand and shared methodologies, client service standards, and other professional protocols and guidelines. Deloitte firms are not subsidiaries or branch offices of a global parent, but instead are separate and distinct legal entities. The Deloitte organization is not a partnership, single firm, or multinational corporation." The website also explains that "[DTTL] and each of its member firms and related entities are legally separate and independent entities, which cannot obligate or bind each other in respect of third parties. DTTL and each DTTL member firm and

related entity is liable only for its own acts and omissions, and not those of each other." (Ex. 1).

Deloitte LLP's website similarly states that "DTTL and each DTTL member firm and each of its

related entities, are legally separate and independent entities" that are "liable only for their own

acts and omissions" and "[t]he Deloitte organization is a global network of independent firms

and not a partnership or single firm." (Ex. 2 at 3). The website also explains that Deloitte LLP

and D&T LLP are "separate and distinct legal entities." (*Id.* at 2).[3]

### C.    Deloitte Lebanon

The FAC does not allege that Deloitte Lebanon audited the financial statements of any of

the Lebanese Banks. The FAC alleges that Deloitte Lebanon, together with a Lebanese Ernst &

Young entity ("EY Lebanon"), audited BdL financial statements, though not the fiscal years

involved. (¶¶ 41-42, 97). FAC ¶ 97 acknowledges that Deloitte Lebanon did not issue a "clean"

audit report for BdL's 2018 fiscal year. To the contrary, the FAC concedes that audit report

contains "qualifications" that the FAC alleges disclose "a number of [BdL's] methods used to

inflate [its] assets and minimize [its] liabilities." (¶ 97).

The FAC purports to base its claims on an August 2023 report issued by Alvarez &

Marsal Middle East Limited ("A&M Report"). (¶¶ 14, 62, 100-04).[4] But the A&M Report

acknowledges that BdL placed several limitations on Deloitte Lebanon's audits; Deloitte

Lebanon audited BdL's 2015-2018 financial statements and its audit reports are all "qualified"

and state the audits were conducted in accordance with BdL's own accounting policies as

---

[3] DTTL's and Deloitte LLP's websites also stated that DTTL and its member firms are "legally separate and independent entities" throughout the 2017-2020 period when Deloitte Lebanon issued audit reports on BdL financial statements. (Exs. 3-10).

[4] The Court may consider, in ruling on this motion to dismiss, documents that are "integral to or explicitly relied upon in the complaint" or on which the claims are "based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

approved by its Central Council, which did not comply with International Financial Reporting

Standards and did not permit the performance of certain auditing procedures. The A&M Report

further states that BdL's audited financial statements nevertheless "provided at least some

clarity" as to BdL's actual financial position, and it is BdL's "published financials," which were

not audited and were different from the audited financial statements, that "do not provide an

accurate picture of [BdL's] financial position." (Ex. 11 §§ 3.4.1, 3.4.2, 3.4.4, 6.2.4, 7.3.1, 7.3.6).

In fact, A&M concludes that it is by "comparing [BdL's] published summary balance sheets to

the audited financial statements" that "we can see there is misreporting of the financial position"

in the unaudited published financials. (*Id.* §§ 7.2.2-7.3.6).

The FAC alleges BdL's 2018 audited financial statements were released "to BDL" in or

around June 2020 (¶ 97), but does not allege they were released to Plaintiffs or the public. The

A&M Report states none of Deloitte Lebanon's audit reports "were ever published" and BdL's

audited financial statements were not publicly available "during the Relevant Period [2015-

2020]." (Ex. 11 § 7.1.1). "[O]nly the CC [BdL's governing body] appear to have been provided

with [them]." (*Id.* § 7.3.6). The FAC does not allege Plaintiffs or any members of the purported

class received and reviewed Deloitte Lebanon's audit reports or BdL's audited financial

statements at any time, let alone during the relevant period.

## **PROCEDURAL HISTORY**

Plaintiffs commenced this action on April 16, 2024. They filed their FAC on July 23,

2024. The FAC asserts four claims against Deloitte LLP and D&T LLP, all for the purported

conduct of Deloitte Lebanon: (i) under RICO, 18 U.S.C. §§ 1962(c) and (d) (First Cause of

Action); and for (ii) unjust enrichment (Sixth Cause of Action); (iii) negligence (Tenth Cause of

Action); and (iv) aiding and abetting fraud (Eleventh Cause of Action).

**ARGUMENT**

Under Rule 12(b)(6), the Court should dismiss the claims against Deloitte LLP and D&T

LLP if the FAC fails to plead "sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this

determination, the Court may not accept as true "conclusory statements" or "legal

conclusion[s]." *Id.* Under Rule 9(b), the Court should dismiss Plaintiffs' fraud-based claims if

the FAC does not plead them "with particularity." *Lum v. Bank of Am.*, 361 F.3d 217, 220 (3d

Cir. 2004). In addition, Plaintiffs "bear[] the burden," on Deloitte LLP and D&T LLP's "facial

[Rule] 12(b)(1) challenge" to Plaintiffs' RICO claims, of pleading facts establishing their

standing. *Budet v. Rutgers Bus. Sch.*, 2024 WL 3371408, at *2 (D.N.J. July 11, 2024).

I.     **THE FAC FAILS TO STATE A CLAIM THAT DELOITTE LLP AND D&T LLP
       ARE DIRECTLY OR INDIRECTLY LIABLE FOR PLAINTIFFS' PURPORTED
       INJURIES**

The FAC does not allege Deloitte LLP or D&T LLP had anything to do with the

"Lebanese Banking Enterprise" or any other alleged conduct, let alone with BdL, Salameh, the

Lebanese Banks, Plaintiffs or their deposits, or Deloitte Lebanon's audits of BdL's financial

statements. In fact, the FAC does not allege Deloitte LLP or D&T LLP did or failed to do

anything at all. The FAC therefore fails to state a claim that they are *directly* liable for Plaintiffs'

purported injuries, whether under RICO or the common law. *See Stevenson v. Thornburgh*, 2024

WL 645187, at *15 (S.D.N.Y. Feb. 14, 2024) (dismissing claims where plaintiffs did not allege

defendants "had anything whatever to do with the audits" at issue); *Snyder v. Dietz & Watson,

Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J. 2011) (dismissing claims where complaint did not allege

"wrongdoing by the defendants themselves").

The FAC also fails to allege facts that show that Deloitte LLP and D&T LLP are liable

for anyone else's alleged conduct. Plaintiffs make the conclusory and entirely unsupported

- 7 -

allegation that Deloitte Lebanon's BdL audits were negligent. Without pleading any specific, recognized theory of vicarious liability or veil piercing, Plaintiffs then assert "Deloitte USA" is liable for Deloitte Lebanon's alleged conduct based on conclusory and unsupported allegations that "Deloitte" is an "integrated international professional firm[] that tout[s itself], and operate[s], as a de facto single entity." (¶¶ 217, 224; *see also* ¶ 41). These allegations do not provide a basis to hold "Deloitte USA" liable for any other Deloitte entity's alleged conduct, for several reasons.

First and foremost, Plaintiffs' "single entity" theory of liability has been soundly rejected by a long line of well-reasoned decisions. Courts in this District have found "[i]t is well recognized that [m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other members simply by virtue of using the same brand name." *In re Royal Dutch/Shell*, 380 F. Supp. 2d at 570-72 (Bissell, C.J.) (dismissing claims against KPMG International and PwC International based on the "notion that 'PwC' and 'KPMG' are 'unitary, worldwide firms'"); *see also In re Royal Dutch/Shell Transp. Sec. Litig.*, 2006 WL 2355402, at *11 (D.N.J. Aug. 14, 2006) (Pisano, J.) (reaffirming rejection of "the application of the 'one firm,' 'unified company' theory to accounting firms" based on Chief Judge Bissell's ruling, which was "thorough, well-reasoned, and well-supported by established precedent"); *Rocker Management L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, 2005 WL 1365772, at *7-8 (D.N.J. June 8, 2005) (Lifland, J.) (declining to allow plaintiffs to "proceed on a 'one firm theory,' *i.e.*, that 'KPMG' holds itself out to the world as one firm with accountants in offices world-wide").

Numerous courts in other districts agree. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 385 n.41 (D. Md. 2004) ("Deloitte U.S. and Deloitte Netherlands are

legally distinct, autonomous firms and will be treated as such."; rejecting assertion that two

Deloitte firms "operated as a single auditing firm" where factual allegations of "coordinated

efforts" and shared "brand name" did not show "the two firms operated as one entity").[5]

In *Royal Ahold*, the court held two Deloitte entities were "distinct, autonomous firms"

even though they both worked on the audit at issue. 351 F. Supp. 2d at 385 n.41. Here, Plaintiffs

do not even allege that Deloitte LLP or D&T LLP directed, participated in, or had any

involvement whatsoever in Deloitte Lebanon's audits of BdL's financial statements.

Even if Plaintiffs' "single entity" theory were legally cognizable (and it is not), the

FAC's allegations that "Deloitte" "tout[s]" itself and "operate[s]" as a "single entity" (¶¶ 217,

224) would not state a claim because those allegations are (i) utterly conclusory and devoid of

any specific factual support, and (ii) contradicted by DTTL's and Deloitte LLP's actual

websites—as shown by the quotations on pages 4-5 above. *See Royal Dutch/Shell*, 380 F. Supp.

2d at 571-72 (rejecting "unitary" firm theory where KPMG International's website stated "each

---

[5] *See also, e.g.*, *Stevenson*, 2024 WL 645187, at *14-16 (dismissing RICO claims against KPMG LLP based on KPMG Switzerland's audits; "The two are not the same, as courts have held repeatedly."); *In re Aegean Marine Sec. Litig.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021) ("As applicable to auditors, this District has declined to treat different firms as a single entity, holding them liable for one another's acts, simply because they shared an associational name and/or collaborated on certain aspects of a transaction."); *Skidmore Energy, Inc. v. KPMG LLP*, 2004 WL 3019097, at *3-4 (N.D. Tex. Dec. 28, 2004) (dismissing RICO claim because "Plaintiffs' allegations that KPMG was acting as a 'worldwide organization' are insufficient as a matter of law to state a claim against KPMG LLP for the acts of the KPMG member firm in Morocco"; "numerous courts addressing similar allegations have required plaintiffs to plead substantially more than a bare bones 'unified company theory'"); *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004) (dismissing RICO and tort claims against PwC entity because "[m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name"); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170-71 (D. Mass. 2002) (rejecting "single entity" theory asserted against KPMG entities and refusing to "treat different firms as a single entity … simply because they shared an associational name and/or collaborated on certain aspects of the relevant transaction").

member firm is a separate and independent legal entity"); *Lernout*, 230 F. Supp. 2d at 170-71

(same).[6]

## II.    THE FAC FAILS TO STATE A RICO CLAIM OR A COMMON LAW CLAIM

The Court should also dismiss the claims against Deloitte LLP and D&T LLP  because

the FAC does not allege facts that establish the required elements for a RICO or common law

claim against "Deloitte USA" or Deloitte Lebanon. *See, e.g.*, *Moriarty v. Classic Auto Grp., Inc.*,

2014 WL 884761, at *6 (D.N.J. Mar. 6, 2014) (dismissing vicarious liability claim where

underlying tort claims were dismissed).

### A.    The FAC fails to state a RICO claim against "Deloitte USA"
###        or Deloitte Lebanon

The FAC does not allege Deloitte LLP and D&T LLP did anything, let alone anything

that violated RICO. The FAC's First Cause of Action purports to assert a RICO claim against

them based on the theory that Deloitte Lebanon violated 18 U.S.C. §§ 1962(c) & (d). However,

the FAC fails to state a plausible RICO claim against Deloitte Lebanon either, for several

independent reasons. And, as shown in Point I, the FAC does not allege any basis to hold

---

[6] The FAC acknowledges that Deloitte LLP, D&T LLP, DTTL, and Deloitte Lebanon are
different entities. (¶ 41). The "separate legal existence" of business entities—and the
fundamental principle that they are liable only for their own acts—is "not lightly disregard[ed]."
*Celularity Inc. v. Evolution Biologyx, LLC*, 2024 WL 489684, at *6 n.13 (D.N.J. Feb. 8, 2024)
(applying Delaware law); *see also State Dep't of Envtl. Prot. v. Ventron, Corp.*, 94 N.J. 473, 500
(1983) (separate corporate existence is a "fundamental proposition[]"; "limited liability normally
will not be abrogated"). A business entity's separate legal existence may be disregarded "only in
exceptional circumstances." *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube LLC*, 2023
WL 5688392, at *6 (Del. Ch. Sept. 5, 2023) (discussing requirements for alter ego liability under
Delaware law); *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988) (same
under New Jersey law). Plaintiffs' threadbare allegations are insufficient to state a claim that
Deloitte LLP and D&T LLP are responsible for the alleged conduct of Deloitte Lebanon. If it
were otherwise, the strict limitations on veil piercing and alter ego liability would be rendered
meaningless. *See Celularity*, 2024 WL 489684, at *6 (dismissing alter ego claim where "Plaintiff
merely alleges, in a conclusory fashion, that Defendants were functioning as a single entity").

Deloitte LLP and D&T LLP responsible for Deloitte Lebanon's alleged conduct. *See Stevenson*, 2024 WL 645187, at \*14-16 (dismissing RICO claims against KPMG LLP based on audits conducted by KPMG Switzerland).

> 1.    **The FAC does not plausibly allege that Plaintiffs have Article III and RICO standing to assert claims under 18 U.S.C. §§ 1962(c) or (d)**

Plaintiffs fail to plead Article III standing because the FAC does not allege facts that plausibly show their injury is "fairly traceable to [defendants'] alleged wrongful conduct." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 246 (3d Cir. 2012). Plaintiffs also fail to plead statutory standing to bring a RICO claim because the FAC does not allege facts that plausibly show "the defendant's violation [of 18 U.S.C. § 1962] not only was a 'but for' cause of [plaintiffs'] injury, but was the proximate cause as well." *Holmes v. SIPC*, 503 U.S. 258, 268 (1992) (proximate causation is required "to limit a person's responsibility for the consequences of that person's own acts"); *see also Schering*, 678 F.3d at 246 (RICO plaintiffs must plead that their "injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962").

There is no causal connection between any conduct by "Deloitte USA" and Plaintiffs' alleged harm because "Deloitte USA" is not alleged to have done anything at all. The FAC also does not and cannot plead facts that plausibly show any conduct by Deloitte Lebanon caused Plaintiffs' alleged harm. Plaintiffs do not and cannot allege they relied on Deloitte Lebanon's BdL audit reports because the reports were not public and Plaintiffs do not allege they received them. Moreover, Plaintiffs do not allege they deposited any money with BdL. Without allegations that Plaintiffs directly relied on Deloitte Lebanon's audit reports, they have not properly alleged that the reports were the "but for" cause of their injuries. *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 525 (D.N.J. 2011).

- 11 -

Furthermore, because Deloitte Lebanon's BdL audit reports were shared only with BdL, the purported mastermind of the alleged RICO scheme (¶¶ 14, 46, 102), Plaintiffs do not and cannot allege facts that plausibly show that if the audit reports were different, the Lebanese Banks would not have fraudulently induced Plaintiffs' deposits, converted the deposits to Lira, and refused to allow withdrawals. The FAC alleges BdL and the Lebanese Banks engaged in the purported "scheme" to "cover up and delay" an "impending" "liquidity crisis" resulting from the Lebanese Banks' conduct stretching back to the "1990s." (¶¶ 48, 54, 57-58). The BdL audit reports could not change that purported past conduct or the purported need to cover up and delay the impending crisis. Indeed, the A&M Report acknowledges that "[t]he audited financial statements of BdL (including the notes to those statements) would have provided at least some clarity" (Ex. 11 § 7.3.6), but although BdL received the audit reports and prepared the financial statements, the FAC alleges the "scheme" continued. *See* pages 3-4 above.

Plaintiffs also do not plead facts that plausibly show proximate causation. The FAC does not allege any connection between "Deloitte USA," or Deloitte Lebanon's audits, and Plaintiffs' alleged injuries. And even if there were any connection, it would involve "several somewhat vaguely defined links," *Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983), from "Deloitte USA" to Deloitte Lebanon, from Deloitte Lebanon to BdL, from BdL to the Lebanese Banks, and from the Lebanese Banks to Plaintiffs. That is too "remote" and "attenuated" to plausibly plead proximate cause, and Plaintiffs have not pled any of those links. *See Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 445 (3d Cir. 2000) (affirming dismissal of RICO claims where the asserted harm was "indirect, remote, and many steps away from the alleged cause"); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 935 (3d Cir. 1999) (same).

- 12 -

## 2.    The FAC fails to state a claim under 18 U.S.C. § 1962(c)

The FAC fails to plead facts that plausibly state a claim under 18 U.S.C. § 1962(c).  A

plaintiff must allege: "(1) the existence of an enterprise engaged in or affecting interstate [or

foreign] commerce; (2) that the defendant was employed by or associated with the enterprise; (3)

that the defendant participated, directly or indirectly, in the conduct or the affairs of the

enterprise; and (4) that the defendant participated through a pattern of racketeering activity that

included at least two racketeering acts." *Capers v. FedEx Ground*, 2012 WL 2050247, at *4

(D.N.J. June 6, 2012). "Where a plaintiff relies on mail and wire fraud as a basis for a RICO

violation, he must plead the allegations of fraud with specificity in accordance with Fed. R. Civ.

9(b)." *Snyder*, 837 F. Supp. 2d at 450. Rule 9(b)'s heightened standard also applies to money

laundering allegations. *See Bohorquez v. Piraquive*, 2018 WL 11421491, at *1 (D.N.J. Apr. 2,

2018).

### a.    The FAC fails to allege that "Deloitte USA" or Deloitte Lebanon "conduct[ed] or participate[d]" in the purported RICO enterprise

18 U.S.C. § 1962(c) states "[i]t shall be unlawful for any person employed by or

associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

affairs through a pattern of racketeering activity or collection of unlawful debt." To "conduct or

participate" in a RICO enterprise's affairs, "one must participate in the operation or management

of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). That means

"knowingly engag[ing] in *directing* the enterprise's affairs." *Univ. of Md. v. Peat, Marwick,

Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (emphasis in original). This test "is considered

very difficult to satisfy." *Crete v. Resort Condos. Int'l, LLC*, 2011 WL 666039, at *9 (D.N.J.

Feb. 14, 2011). It is not satisfied by "action involving some degree of decisionmaking." *Univ. of*

*Md.*, 996 F.2d at 1538-39.

The FAC does not allege that "Deloitte USA" or Deloitte Lebanon "conduct[ed] or participate[d]" in a RICO enterprise because it does not plead facts that show they "direct[ed]" the alleged Lebanese Banking Enterprise. On the contrary, FAC ¶ 123, which lists the "Membership and Roles of Each Class of Participant," does not name any Deloitte entity at all. It lists BdL, Salameh, and the "Commercial Bank Conspirators." Similarly, FAC ¶ 114 alleges there are "[c]ommon questions of law and fact" about whether "BDL and the Commercial Bank Conspirators" engaged in a "common plan." The FAC does not allege there are any such "common questions" about any Deloitte entity.

The FAC contains allegations about what unidentified "Defendants" purportedly did. (*E.g.*, ¶ 147 ("At all relevant times, Defendants conducted (managed) or participated, directly or indirectly, in the conduct (management) of the Lebanese Banking enterprise, through a pattern of unlawful activity, by engaging in multiple, repeated, and continuous acts of mail fraud and wire fraud."). Those allegations do not and cannot state a claim because they are conclusory and improperly lump all "Defendants" together. *See ATR Paper, Inc. v. Bangkit (U.S.A.), Inc.*, 2024 WL 3518119, at *4 (D.N.J. July 24, 2024) (collecting cases in which courts in this District "routinely dismiss complaints for improper group pleading" under Rule 8); *Cheng v. Byrd*, 2024 WL 3873945, at *2 (D.N.J. Aug. 20, 2024) (same).

Moreover, other FAC allegations show these conclusory allegations do not refer to Deloitte LLP, D&T LLP or Deloitte Lebanon. For example, FAC ¶ 136 alleges unidentified "Defendants exerted control over, conducted and/or participated in the Lebanese Banking Enterprise by fraudulently claiming that *they*, and the overall system, were solvent." But the FAC does not and cannot allege facts that show "Deloitte USA" or Deloitte Lebanon exerted

control over, conducted or participated in the alleged Lebanese Banking Enterprise, let alone that the solvency of "Deloitte USA" or Deloitte Lebanon was relevant to that "Enterprise." For another example, FAC ¶ 147 alleges unidentified "Defendants" "managed" the "Enterprise" by engaging in "mail fraud and wire fraud." But the FAC does not allege facts that show "Deloitte USA" or Deloitte Lebanon managed the "Enterprise," much less engaged in any fraud.

With respect to Deloitte Lebanon, the FAC alleges only that its audits of BdL's financial statements were negligent. The FAC's allegations of negligence are entirely conclusory and unparticularized. (¶¶ 41, 97). But even if the FAC had adequately alleged the audits were negligent, Deloitte Lebanon's alleged conduct would not, ***as a matter of law,*** constitute "conduct[ing] or participat[ing]" in a RICO enterprise. In *Reves*, for example, the Supreme Court held an accounting firm did not violate § 1962(c) when its conduct was "limited to the audits, meetings with the Board of Directors to explain the audits, and presentations at annual meetings," even though it made critical mistakes in its audits of a co-op's financial statements that affected its solvency. 507 U.S. at 178-79, 194-95. Similarly, in *Univ. of Md.*, the Third Circuit found that merely performing "deficient audits" and "issu[ing] unqualified auditor's opinions" did "not show that Peat Marwick was participating in the affairs of the [RICO] enterprise." 996 F.2d at 1538-41. For the same reasons, even if Deloitte Lebanon's audits were negligent (and the FAC does not plausibly allege that), that would not mean it was "employed by or associated with" a RICO enterprise. *Capers*, 2012 WL 2050247, at *4.

> **b.** **The FAC does not allege that "Deloitte USA" or Deloitte Lebanon participated in two or more predicate acts that constitute a pattern**

"No defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern." *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 168 (3d Cir. 2013); *see also Hollis-Arrington v. PHH Mortg. Corp.*, 205 F. App'x 48, 54

(3d Cir. 2006) (same). But the FAC does not allege "Deloitte USA" or Deloitte Lebanon committed *any* predicate racketeering activity. *See Snyder,* 837 F. Supp. 2d at 450 (dismissing RICO claims where complaint did not allege "wrongdoing by the defendants themselves").

The FAC lumps unidentified "Defendants" together in connection with purported predicate acts. (¶¶ 126, 146). But that does not satisfy Rule 8 or Rule 9(b). *See ATR*, 2024 WL 3518119, at *4 (dismissing claims for "improper group pleading" under Rule 8); *Snyder,* 837 F. Supp. 2d at 450 (dismissing RICO claims under Rule 9(b) because "Plaintiff lumps all three defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions").

To plead wire fraud and mail fraud, Plaintiffs had to allege, among other things, "participation by the defendant with specific intent to defraud." *Giovinazzo v. DeAngelo*, 2022 WL 795713, at *7 (D.N.J. Mar. 16, 2022); *see also Kornea v. J.S.D. Mgm't, Inc.*, 366 F. Supp. 3d 660, 670 (E.D. Pa. 2019). However, the FAC does not allege facts that show "Deloitte USA" or Deloitte Lebanon had a "specific intent to defraud" Plaintiffs or others.

The FAC also fails to allege "Deloitte USA" or Deloitte Lebanon "participat[ed]" in any wire fraud or mail fraud. On the contrary, the FAC alleges the "[w]ritten representations (including text messages and emails) and telephone calls [were] between the *Bank Defendants* and U.S. Depositors." (¶ 146(2)). The FAC is careful *not* to allege that these purported predicate acts involved any transmission of Deloitte Lebanon's audit reports or BdL's audited financial statements. Because those documents were not public (Ex. 11 § 7.1.1), the FAC does not and cannot allege that Deloitte Lebanon transmitted them to anyone other than "to BDL." (¶ 97).

FAC ¶ 146 is an example of the deficiency of Plaintiffs' pleading. It alleges unidentified "Defendants' use of the U.S. Mail and interstate wire facilities to perpetrate the *opioids'*

marketing scheme [sic] involved thousands of communications," including "dissemination of annual financial statements … to Plaintiffs and other U.S. depositors that misrepresented the actual financial condition of the Commercial Bank Conspirators and the Lebanese financial system." (¶ 146(1)).[7] "Lumping" defendants together in a conclusory allegation does not state a claim. Moreover, ¶ 146 could not refer to Deloitte Lebanon's audit reports and *BdL's* audited financial statements because they were not public. The FAC does not allege they were disseminated "to Plaintiffs and other U.S. depositors" or addressed "the financial condition of the Commercial Banks or the Lebanese financial system."

In an attempt to plead money laundering, the FAC alleges unidentified "Defendants" received deposits and the "Commercial Bank Conspirators" prohibited "U.S. depositors from withdrawing their deposits" and permitted "insiders" to withdraw and transfer deposits to banks outside Lebanon. (¶¶ 126(c) & 146(3)). Once again, Plaintiffs' lumping of defendants together in a conclusory allegation does not state a claim against "Deloitte USA" or Deloitte Lebanon. Moreover, these allegations too could not refer to them because the FAC does not and could not plausibly allege that Plaintiffs deposited money with them or that they could or did prohibit or permit withdrawals from the Lebanese Banks.

Plaintiffs' allegations of predicate acts also fail because they do not satisfy Rule 9(b)'s heightened pleading requirements. Plaintiffs must plead "the date, place or time of the fraud" or "through alternative means" "inject[] precision and some measure of substantiation into their

---

[7] Plaintiffs' reference to the "opioids' marketing scheme" shows the FAC is a cut-and-paste job. *See Duldulao v. La Creperia Café, Inc.*, 2011 WL 6840585, at *3 (M.D. Fla. Dec. 29, 2011) ("The vague and conclusory complaint, an obvious cut-and-paste job, neither creates a reasonable inference of liability nor provides fair notice of the claim."); *Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*, 2010 WL 1287058, at *17 (E.D. Wis. Mar. 20, 2010) ("[A]n assertion that [management] committed fraud required more than the cut-and-paste job found in the amended complaint.").

KL3 3726394.1

allegations of fraud." *Lum*, 361 F.3d at 224. "Plaintiffs *also* must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* The FAC's conclusory allegations do not satisfy any of these requirements. *Id.* (affirming dismissal where predicate act allegations did not "indicate which defendant(s) made misrepresentations to which plaintiff(s)"); *Snyder,* 837 F. Supp. 2d at 450 (dismissing where complaint "lacks sufficient detail").

### 3.    The FAC fails to allege a conspiracy claim under 18 U.S.C. § 1962(d)

"To state a claim under 18 U.S.C. § 1962(d), a plaintiff must show the defendant has knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise." *Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*, 2024 WL 658263, at *5 (D.N.J. Feb. 16, 2024). "[I]t is well-established that a general allegation of conspiracy without a statement of facts is an allegation of legal conclusion and insufficient to state a cause of action." *Id*. A plaintiff must allege "(1) an agreement to commit predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)." *Id.* An agreement to "commit the underlying predicate acts" is not sufficient; a plaintiff must show an agreement "*to violate RICO*" by "the commission of a *pattern* of racketeering activity." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 539 (3d Cir. 2012) (first emphasis in original).

"Where service providers (such as accountants) are concerned, 'liability arises only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering." *Northwestern Human Servs., Inc. v. Panacio*, 2005 WL 1353609, at *3 (E.D. Pa. June 6, 2005) (quoting *Smith v. Berg*, 247 F.3d 532, 538 n.11 (3d Cir. 2001)). Those who "merely provide services" cannot be held liable under § 1962(d). *Smith*, 247 F.3d at 538 n.11.

- 18 -

The FAC does not state a plausible Section 1962(d) claim against "Deloitte USA" or

Deloitte Lebanon that meets these requirements. *First*, "[p]laintiff[s] merely offer[] conclusory

statements" and "do[] not provide any detail of the circumstances or content of any agreement"

to commit predicate acts of fraud. *Scalercio-Isenberg*, 2024 WL 658263, at *5 (dismissing for

this reason); *see also Lento v. Altman*, 2023 WL 4232158, at *5 (D.N.J. June 27, 2023)

(dismissing where conspiracy allegations were "conclusory statements masquerading as facts").

FAC ¶ 126 alleges unidentified "Defendants, with full knowledge and purpose, conspired, in

violation of 18 U.S.C. § 1962(d), to violate § 1962(c)." That is conclusory and improperly lumps

"Defendants" together. Moreover, the allegation could not apply to "Deloitte USA" or Deloitte

Lebanon as it continues: "Defendants did so by engaging in multiple, repeated, and continuous

violations of" the wire fraud, mail fraud, and money laundering statutes. As shown above, the

FAC does not allege "Deloitte USA" or Deloitte Lebanon engaged in any such violations. *See*

*Capers*, 2012 WL 2050247, at *4 (dismissing § 1962(d) claim for failure to allege facts showing

"Defendants entered into an agreement to perform at least two predicate acts").

*Second*, the FAC does not allege plausible facts that show "Deloitte USA" or Deloitte

Lebanon had knowledge of any predicate acts or that they were part of a pattern of racketeering

activity conducted to violate RICO. *See id.* (dismissing for failure to allege facts "showing the

requisite knowledge"). The FAC again offers only conclusory allegations. For example, FAC ¶

221 alleges Deloitte Lebanon and EY Lebanon, "through their access to BDL's books and

records, and participation in preparing fraudulent financial statements, had knowledge that BDL

was at the center of a centrally orchestrated conspiracy to defraud depositors with the

Commercial Bank Conspirators." But the FAC does not plead facts that plausibly show how

access to BdL's "books and records" and financial statements would inform Deloitte Lebanon

that BdL was "orchestrat[ing]" a RICO conspiracy in which commercial banks fraudulently induced Plaintiffs to deposit dollars, converted those dollars to Lira, and refused to permit withdrawals. *See Nappier v. PricewaterhouseCoopers LLP*, 227 F. Supp. 2d 263, 276-77 (D.N.J. 2002) ("PwC's role as Campbell's auditor is insufficient, by itself, to permit an inference that PwC knew of [Campbell's] allegedly deceptive practices.").

Plaintiffs' allegations that "Deloitte and EY knew that BDL's misrepresentations were designed to induce the depositors to deposit and maintain dollar deposits at the Commercial Bank Conspirators" (¶ 223), that Deloitte Lebanon and EY Lebanon "knew that BDL was engaged in fraud, and provided substantial assistance to BDL in its fraudulent course of conduct" (¶ 103), and that unidentified "Defendants, with full knowledge and purpose, conspired" (¶ 126), are also impermissibly conclusory and unsupported by allegations of plausible facts. "[T]he Complaint fails to allege what was communicated to ["Deloitte USA" or Deloitte Lebanon], when and how the communication took place, and who was involved in the communication." *DeFazio v. Wells Fargo Bank N.A.*, 2020 WL 1888252, at *5 (D.N.J. Apr. 16, 2020). Without these facts, Plaintiffs' allegation of knowledge is conclusory and fails to meet "the plausibility standard of Rule 8." *Id.*

*Third*, the FAC does not come close to alleging facts that show "Deloitte USA" or Deloitte Lebanon provided "services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." *Smith*, 247 F.3d at 538 n.11. "It cannot be said that by merely performing what are generic financial and related services to … [a] company, even if they are later found to be deficient, an accounting firm has opened itself to liability under the federal racketeering statute." *Univ. of Md.*, 996 F.2d at 1539-40.

The pleading standard is high. For example, in *Northwestern Human Services*, plaintiffs alleged NHS's president, Panaccio, hired an accountant, Bowers, "to create and control secret bank accounts from which Bowers knowingly paid Panaccio's personal, non-reimbursable expenses" and "Bowers knew that the accounts in question were secret and that he was participating in a fraudulent scheme by unlawfully siphoning funds from NHS." 2005 WL 1353609, at *1-2. The court still dismissed plaintiffs' Section 1962(d) claim against Bowers because "[p]laintiffs do not allege that services provided by Bowers were knowingly directed at furthering the alleged overarching RICO scheme" to "loot[] NHS by inflating its revenues via a series of fraudulent acts." *Id.* at *4. The FAC's conclusory allegations against "Deloitte USA" and Deloitte Lebanon are far more deficient.

*Fourth*, the FAC does not and cannot allege facts that plausibly show that "Deloitte USA" or Deloitte Lebanon knowingly "agree[d] to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000). The FAC does not allege "Deloitte USA" performed any services. And Deloitte Lebanon's audit reports and BdL's audited financial statements could not facilitate the alleged scheme because they were disclosed only "to BDL" (¶ 97), the purported mastermind that already knew its own "true" financial condition. (¶¶ 14, 46, 48, 54, 57-58, 102). Moreover, the audit reports "provided at least some clarity." (Ex. 11 § 7.3.6). The 2018 audit report allegedly showed BdL's methods "to inflate assets and minimize liabilities." (¶ 97). And Deloitte Lebanon's reports on its 2015-2017 BdL audits were also "qualified." (Ex. 11 § 3.4.2).

- 21 -

**B.** **The FAC fails to state common law claims against "Deloitte USA" or Deloitte Lebanon**

The FAC does not allege Deloitte LLP and D&T LLP did anything, or any basis to hold them responsible for Deloitte Lebanon's alleged unjust enrichment, negligence, and aiding and abetting fraud. *See Nuevo Mundo*, 2004 WL 112948, at *3 (dismissing negligence and fraud claims asserted against PwC entity based on allegation that it was a "single firm" with an alleged Peruvian affiliate that conducted the audit). Moreover, there is no liability to impute to "Deloitte USA" because the FAC does not state these common law claims against Deloitte Lebanon.[8]

### 1.    *The FAC fails to state a claim for unjust enrichment*

Plaintiffs' Sixth Cause of Action asserts a claim for unjust enrichment. The FAC alleges "[t]he BDL Accounting Defendants … who were negligent and aided and abetted fraudulent conduct, should not in good conscience be able to keep the professional fees and other remuneration received for their work." (¶ 188). The FAC also alleges "[i]t would be against equity and good conscience to permit Defendants to retain what they have misappropriated from Plaintiffs and the Class." (¶ 189). Those allegations are insufficient.

Once again, the FAC does not allege Deloitte LLP and D&T LLP did, received, or misappropriated anything, or any basis to hold them responsible for Deloitte Lebanon's audits. The FAC also fails to allege any of the elements required to state a claim for unjust enrichment against Deloitte Lebanon.

*First*, Plaintiffs do not allege they "conferred a direct benefit on ["Deloitte USA" or Deloitte Lebanon], and that [either of them] received such a benefit." *Ajayi v. Cula, LLC*, 2024

---

[8] This motion applies the law of Plaintiffs' chosen forum, New Jersey, to their common law claims. Plaintiffs do not allege that another law applies. Deloitte LLP and D&T LLP reserve any and all choice of law arguments.

WL 2105557, at *4 (D.N.J. May 9, 2024) (dismissing unjust enrichment claim where that was

not alleged). The FAC alleges that BdL, not Plaintiffs, paid Deloitte Lebanon. (*See* ¶¶ 41, 188).

*See Pappalardo v. Combat Sports, Inc.*, 2011 WL 6756949, at *11 (D.N.J. Dec. 23, 2011) ("It is

the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the

basis of an unjust enrichment claim."); *Giovinazzo*, 2022 WL 795713, at *4-5 (same). The

FAC's assertion that Deloitte Lebanon "misappropriated" *something* from Plaintiffs and the

purported class (¶ 189) is conclusory, vague and not based on any plausible factual allegation.

*See Himmel v. Wunderwein LLC*, 2024 WL 2933257, at *6 (D.N.J. June 11, 2024) (dismissing

unjust enrichment counterclaim because allegations were "conclusory and vague").

     *Second*, even if Plaintiffs had alleged that they conferred a benefit on "Deloitte USA" or

Deloitte Lebanon (and they do not), the FAC does not allege Plaintiffs "expected remuneration

from [either of them] at the time [they] performed or conferred a benefit." *Katz v. Ambit

Northeast, LLC*, 2023 WL 2570147, at *3 (D.N.J. Mar. 20, 2023) (dismissing unjust enrichment

for this reason); *Giovinazzo*, 2022 WL 795713, at *4-5 (same).

     *Third*, the FAC does not allege a "direct relationship" between Plaintiffs and "Deloitte

USA" or Deloitte Lebanon, which is also required to state a claim. *See Katz*, 2023 WL 2570147,

at *4 (dismissing unjust enrichment claim with prejudice where "Plaintiff does not allege any

course of dealings (*e.g.*, correspondence or agreement) with Defendant during the relevant time

period").

     *Fourth*, the FAC alleges it would be unjust for "Deloitte USA" or Deloitte Lebanon to

keep any professional fees because Deloitte Lebanon was "negligent and aided and abetted

fraudulent conduct" (¶ 188), but fails to allege "Deloitte USA" even received any fees.

Moreover, as shown below, Plaintiffs' negligence and aiding and abetting fraud claims fail to

state a claim.

### 2.    *The FAC fails to state a claim for negligence*

Plaintiffs' Tenth Cause of Action asserts a negligence claim against Deloitte LLP and

D&T LLP based on Deloitte Lebanon's audits of BdL's financial statements. The FAC fails to

state a negligence claim because Plaintiffs do not plead plausible facts showing privity or the

other elements of a negligence claim.

The Accountants Liability Act, N.J.S.A. 2A:53A-25(b), applies to "audit" services,

N.J.S.A. 2A:53A-25(a)(4), and "expressly limit[s] non-client claims against accountants with the

specific purpose of restoring the concept of privity to accountants' liability to third parties."

*Pasqua v. County of Hunterdon*, 2016 WL 4253958, at *17 (D.N.J. Aug. 11, 2016) (citing *E.

Dickerson, Inc. & Son v. Ernst & Young, LLP*, 179 N.J. 500, 504 (2004)). Accordingly, to state a

claim for negligence against an accountant, a non-client "claimant," such as Plaintiffs, who do

not allege they were clients of "Deloitte USA" or Deloitte Lebanon, must allege facts that show:

(1) the claimant relied on the services the accountant provided to its client, *see* N.J.S.A. 2A:53A-

25(b); *Pasqua*, 2016 WL 4253958, at *17-18; (2) "the accountant 'knew at the time of the

engagement by the client or thereafter agreed that the claimant could rely on its work,'" *id.* at

*17 (citing *Cast Art Indus., LLC v. KPMG LLP*, 209 N.J. 208, 227 (2012)); (3) the accountant

"knew that the claimant intended to rely" on the accountant's services in a "particular transaction

between [the] client and [the] claimant," *E. Dickerson*, 179 N.J. at 505; and (4) "'the accountant

used words or conduct directly expressed to the claimant, which establish the accountant's

understanding of the claimant's intended reliance on his work.'" *Pasqua*, 2016 WL 4253958, at

*17 (quoting *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 361 N.J. Super. 362 (App. Div.

2003)).

KL3 3726394.1

The FAC does not allege facts that meet any of these requirements as to Deloitte LLP, D&T LLP, or Deloitte Lebanon. *See Nype v. Spitz*, 2022 WL 329321, at *4 (D.N.J. Feb. 3, 2022) (dismissing claims where complaint did not allege statutory requirements).

(1) The FAC does not allege "Deloitte USA" provided any services, and does not and cannot plausibly allege that Plaintiffs reviewed and relied on Deloitte Lebanon's audit reports. *See Pasqua*, 2016 WL 4253958, at *18. FAC ¶ 214 alleges Plaintiffs "did, in fact, rely on the accuracy" of "BDL's and … the Commercial Bank Conspirators' financial statements, in determining whether to maintain their deposits with the Commercial Bank Conspirators and/or make additional deposits." But that allegation is utterly conclusory and devoid of any specific factual support. Moreover, it does not allege that Plaintiffs relied on Deloitte Lebanon's audit reports or BdL's *audited* financial statements. Nor could it plausibly do so since those documents were not publicly available. And its reference to the Lebanese Banks' financial statements is irrelevant as to Deloitte Lebanon because the FAC does not allege Deloitte Lebanon audited any of those financial statements.

(2) The FAC does not allege facts that plausibly show "Deloitte USA" or Deloitte Lebanon "knew at the time of the engagement by [BdL] or thereafter agreed that [Plaintiffs] could rely on its work." *Pasqua*, 2016 WL 4253958, at *17. The FAC's allegation that Deloitte Lebanon "knew" depositors "would rely" on "BDL's and on the Commercial Bank Conspirators' financial statements" (¶ 214) is conclusory and unsupported. "[T]he Complaint fails to allege what was communicated to [Deloitte Lebanon] when and how the communication took place, and who was involved in the communication." *DeFazio*, 2020 WL 1888252, at *5. And it is implausible that Deloitte Lebanon would know that depositors would rely on BdL's audited financial statements when they were not public.

(3) The FAC does not allege facts that plausibly show Plaintiffs relied on "Deloitte USA," or on Deloitte Lebanon's audit reports, in connection with a "particular transaction" *between Plaintiffs and BdL*. The FAC does not allege any such transaction. Plaintiffs allege they made deposits with the Lebanese Banks, not BdL. *See E. Dickerson*, 179 N.J. at 505 (affirming dismissal for failure to plead a transaction between claimant and the accountant's client).

(4) Nor does the FAC allege "Deloitte USA" or Deloitte Lebanon "used words or conduct *directly expressed to the [Plaintiffs]*, which establish ["Deloitte USA's" or Deloitte Lebanon's] understanding of the [Plaintiffs'] intended reliance on [its] work." *Pasqua*, 2016 WL 4253958, at *17-18 (dismissing negligence claims that did not allege this); *see also LCA GP LLC v. City of Plainfield*, 2018 WL 11587954, at *4 (D.N.J. July 13, 2018) (same). Indeed, the FAC does not contain any allegation that there was *any* contact between Plaintiffs and "Deloitte USA," Deloitte Lebanon or BdL, whether direct or indirect.

In addition, nearly "[a]ll the elements of a negligence claim—duty, breach, causation, and damages—are not pleaded for in the complaint." *Estate of Moore v. Cumberland Cnty.*, 2018 WL 1203470, at *5 (D.N.J. Mar. 8, 2018) (dismissing negligence claim). There are no such allegations concerning Deloitte LLP or D&T LLP and any allegations as to Deloitte Lebanon are conclusory and unsupported.

First, any "duty to the individual complaining" is "restrained by the boundaries of foreseeability." *Graddy v. Deutsche Bank Trust Co.*, 2012 WL 762246, at *2-3 (D.N.J. Mar. 6, 2012). The FAC does not allege any facts that plausibly show it was foreseeable to "Deloitte USA" or Deloitte Lebanon that Plaintiffs would rely on the non-public audit reports. "Merely declaring [defendant] had an obligation" to Plaintiffs is insufficient. *Id*.

Second, the FAC does not make any non-conclusory allegation that "Deloitte USA" did anything or that Deloitte Lebanon's audits of BdL's 2015-2018 financial statements were negligent. (¶¶ 97, 103, 212-13). The FAC makes the conclusory assertion that Deloitte Lebanon failed to apply "applicable accounting principles," but does not allege what accounting principles were "applicable" or how the audits failed to apply them. (¶ 103, 213). The A&M Report states BdL placed limits on Deloitte Lebanon's audit engagements. (Ex. 11 §§ 3.4.2, 3.4.4). According to the FAC and the A&M Report, Deloitte Lebanon's audit reports state it audited BdL's financial statements in accordance with BdL's accounting policies. (¶ 97; Ex. 11 § 3.4.2). The FAC fails to allege facts that show Deloitte Lebanon did not do so.[9] Indeed, the FAC lauds Deloitte Lebanon's audit report concerning BdL's 2018 financial statements because it includes "qualifications" that the FAC alleges show BdL's methods to "inflate assets and minimize liabilities." (¶ 97). A&M states Deloitte Lebanon also issued "qualified" audit reports on BdL's 2015-2017 financial statements. (Ex. 11 §§ 3.4.2, 7.3.6). While FAC ¶ 97 contends Deloitte Lebanon "should have" "released" its 2018 audit report "to BDL" a year earlier than it did, the FAC does not allege any plausible facts that create an obligation to do so.[10]

Finally, the FAC fails to plead facts that plausibly show causation in fact or proximate causation. Plaintiffs do not allege "Deloitte USA" did anything, or that they reviewed Deloitte Lebanon's non-public audit reports or were entitled to do so. And Plaintiffs do not and cannot

---

[9] The A&M Report states "[i]t is not uncommon for central banks to prepare financial statements that diverge from IFRS, but best practice is to disclose such information in their publicly available audited financial statements." (Ex. 11 § 6.10.1).

[10] The FAC makes the conclusory allegation that Deloitte Lebanon was "responsible for producing accurate financial statements that accurately reflected Byblos's financial condition." (¶ 211). But there is no allegation that Deloitte Lebanon audited Byblos's financial statements, let alone prepared those statements.

allege facts that would plausibly show that if Deloitte Lebanon's audit reports had been different, BdL, the alleged mastermind of the purported scheme, would have stopped its scheme or reported different financial information.

Moreover, the theory of causation asserted in the FAC is not plausible. The FAC alleges that had Plaintiffs known the "perilous financial condition of BDL," they "would have withdrawn their deposits [with the Lebanese Banks] well before it became impossible to do so." (¶ 216). But the FAC does not allege any facts that show the Lebanese Banks would have permitted Plaintiffs to withdraw their funds if the "perilous financial condition of BDL" had been made public earlier. Quite the contrary, Plaintiffs allege the Lebanese Banks engaged in the purported scheme "to cover up and delay" an impending "liquidity crisis." (¶¶ 48, 54, 57-58). And Plaintiffs' theory that they could have withdrawn their deposits could only work if they— and no one else—became aware of the Lebanese banking crisis and they alone were permitted to withdraw their funds. That assumption is both implausible and speculative. *See Contel Global Marketing, Inc. v. Dreifuss*, 2010 WL 374946, at *5-6 (N.J. App. Div. Feb. 4, 2010) (dismissing malpractice claims where causation allegations were based on "speculation").

### 3. The FAC fails to state a claim for aiding and abetting fraud

Plaintiffs' Eleventh Cause of Action asserts a claim for aiding and abetting fraud. "To establish liability for aiding and abetting fraud, a plaintiff must establish [1] the underlying wrongdoing (i.e., the fraud committed by another party), [2] that defendant was aware of his role in the tortious activity at the time it was committed, and [3] that the defendant knowingly and substantially assisted the principal violation." *DeFazio*, 2020 WL 1888252, at *5. The FAC does not allege that Deloitte LLP and D&T LLP aided and abetted fraud, or any basis to hold them responsible for the purported conduct of Deloitte Lebanon. The FAC also fails to allege facts that plausibly establish the elements of aiding-and-abetting fraud against Deloitte Lebanon under

Rule 8 or Rule 9(b), which applies to "claims sounding in fraud." *Id.*

*First*, Plaintiffs do not adequately allege an underlying fraud by BdL. The FAC alleges

BdL made "misrepresentations," but those assertions are conclusory. (*E.g.*, ¶¶ 67, 77, 91, 220).

*DeFazio*, 2020 WL 1888252, at *5 (dismissing claim for aiding and abetting fraud that was

based on "conclusory allegation[s]").

*Second*, as explained above, the FAC does not allege facts that plausibly show "Deloitte

USA" or Deloitte Lebanon was "aware" of the alleged fraud or its purported "role" in it. The

FAC's conclusory allegation of knowledge is insufficient. *See DeFazio*, 2020 WL 1888252, at

*5 ("the Complaint fails to allege what was communicated to Wells Fargo, when and how the

communication took place, and who was involved in the communication"); *Gibly v. Best Buy

Co.*, 2022 WL 16637916, at *3 (D.N.J. Nov. 2, 2022) (dismissing claim where FAC failed to

adequately allege defendant "knew of the underlying fraud").

*Third*, the FAC does not and cannot allege facts that show "Deloitte USA" or Deloitte

Lebanon "knowingly and substantially assisted" the alleged fraud. The FAC alleges Deloitte

Lebanon provided "substantial assistance to BDL['s]" purported fraud "[b]y signing off on

BDL's financial statements for 2015-17, and failing to timely issue financial statements for

2018." (¶ 222). Since Deloitte Lebanon's audit reports and BdL's audited financial statements

were not public, however, they could not and did not assist BdL's alleged fraud. Moreover, as

noted, Deloitte Lebanon's audit reports and BdL's 2015-2018 audited financial statements

"provided at least some clarity" (Ex. 11 § 7.3.6), the 2018 audit report disclosed methods to

"inflate assets and minimize liabilities" (¶ 97), and Deloitte Lebanon's 2015-2017 audit reports

were also qualified. (Ex. 11 § 3.4.2). That is not "signing off" on BdL's financial statements.

And the FAC does not and cannot plausibly allege that "Deloitte USA" or Deloitte Lebanon

could have stopped the alleged fraud. The FAC alleges Deloitte Lebanon issued a qualified

opinion on BdL's 2018 financial statements (¶ 97) and A&M states Deloitte Lebanon's reports

on BdL's 2015-2017 financial statements were also qualified (Ex. 11 § 3.4.2), but the FAC does

not allege BdL changed course after Deloitte Lebanon issued those qualified opinions. *See*

*DeFazio*, 2020 WL 1888252, at *5 (complaint was "devoid of facts which, if true, would

establish that [defendant] knowingly and substantially assisted a third party's fraud on

Plaintiff"). The FAC's conclusory allegations of proximate causation (¶ 225) also fail for these

reasons.

## <u>CONCLUSION</u>

For these reasons, Deloitte LLP and D&T LLP respectfully request that the Court dismiss

the claims against them with prejudice. Any further amendment would be futile because

Plaintiffs concede that "Deloitte USA" did not do anything, and, under well-settled case law,

Deloitte LLP and D&T LLP cannot be held liable for the alleged conduct of another member or

affiliate of an international network of independent accounting firms.

Dated:   November 26, 2024               Respectfully submitted,

                                                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                          s/  Boaz I. Cohen
                                           Michael J. Dell (admitted *pro hac vice*)
                                           Tobias B. Jacoby (admitted *pro hac vice*)
                                           Boaz I. Cohen (N.J. Bar No. 177762015)
                                         1177 Avenue of the Americas
                                         New York, NY 10036
                                         (212) 715-9100
                                         mdell@kramerlevin.com
                                         tjacoby@kramerlevin.com
                                         bcohen@kramerlevin.com

                                         *Attorneys for Defendants*
                                         *Deloitte LLP and Deloitte & Touche LLP*