Jennifer Suh
William R. Maguire (admitted *pro hac vice*)
Carl W. Mills (admitted *pro hac vice*)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
Tel.: (212) 837-6000
Fax: (212) 299-6882
jennifer.suh@hugheshubbard.com
bill.maguire@hugheshubbard.com
carl.mills@hugheshubbard.com

*Attorneys for Ernst & Young U.S. LLP*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KARIM P. NAJJAR, *et al.*, individually and behalf of all others similarly situated, | Civil Action No. 1:24-cv-05043-CPO-EAP |
| Plaintiffs, | Hon. Hon. Christine P. O'Hearn, U.S.D.J. |
| v. | Hon. Elizabeth A. Pascal, U.S.M.J. |
| RIAD SALAMEH, *et al.*, | **Motion Date: March 17, 2025** |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

**DEFENDANT ERNST & YOUNG U.S. LLP'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**<u>PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

Page

STATEMENT OF FACTS ...................................................................................8

LEGAL STANDARD.........................................................................................10

I.    EY USA IS NOT LIABLE FOR THE ALLEGED ACTS OF EY
      LEBANON ............................................................................................12

II.   THE COMPLAINT SHOULD BE DISMISSED
      FOR FAILURE TO STATE A CLAIM .................................................16

      A.   The Complaint Fails to State a RICO Claim
           Against EY USA (First Cause of Action)............................................16

           1.   The Complaint fails to state a claim
                against EY USA under Section 1962(c) ....................................16

           2.   The Complaint fails to state a claim
                against EY USA under Section 1962(d) ....................................18

      B.   The Complaint Fails to State a Claim for Unjust Enrichment
           Against EY USA (Sixth Cause of Action)............................................20

      C.   The Complaint Fails to State a Claim For Negligence
           Against EY USA (Eighth and Tenth Causes of Action).......................20

      D.   The Complaint Fails to State a Claim for Aiding and Abetting Fraud
           Against EY USA (Ninth and Eleventh Causes of Action) ...................22

      E.   The Complaint Fails to State a Claim Based on EY Lebanon's Conduct ............23

CONCLUSION....................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................4, 8, 18

*ATR Paper Inc. v. Bangkit (U.S.A.), Inc.*,
    No. 23-12696 (BRM) (SDA), 2024 WL 3518119 (D.N.J. July 24, 2024) ...............................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................4, 6

*United States ex rel. Bennett v. Bayer Corp.*,
    No. 17-4188 (ES) (JBC), 2022 WL 970219 (D.N.J. Mar. 31, 2022).......................................6

*Buck v. Hampton Township School District*,
    452 F.3d 256 (3d Cir. 2006)..............................................................................................5

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997).......................................................................................5, 19

*Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) ............................................................17, 20

*Capers v. FedEx Ground*,
    No. 2:02-CV-5352 (WJM), 2012 WL 2050247 (D.N.J. June 6, 2012) ..................................13

*Capital Health System, Inc. v. Veznedaroglu*,
    No. 15-8288 (MAS) (LHG), 2017 WL 751855 (D.N.J. Feb. 27, 2017).................................11

*Conley v. Gibson*,
    355 U.S. 41 (1957)............................................................................................................6

*Craftmatic Securities Litigation v. Kraftsow*,
    890 F.2d 628 (3d Cir. 1989)...............................................................................................6

*Crete v. Resort Condominiums International, LLC*,
    No. 09-5665, 2011 WL 666039 (D.N.J. Feb. 14, 2011) .........................................................15

*Delzotti v. Morris*,
    No. 14-7223 (JBS/AMD), 2015 WL 5306215 (D.N.J. Sept. 10, 2015) .................................17

*E. Dickerson & Son, Inc. v. Ernst & Young, LLP*,
    179 N.J. 500 (N.J. 2004) ..................................................................................................16

*Failla v. City of Passaic*,
  146 F.3d 149 (3d Cir. 1998)...........................................................................17

*Feingold v. Graff*,
  516 F. App'x 223 (3d Cir. 2013) ....................................................................5

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007)...........................................................................5

*Galicki v. New Jersey*,
  No. 14-169 (JLL), 2015 WL 3970297 (D.N.J. June 29, 2015)........................6

*Goh v. Baldor Electric*,
  No. 3:98-MC-064-T, 1999 WL 20943 (N.D. Tex. Jan. 13, 1999)...................9

*Grant v. Turner*,
  No. 09-2381 (JAG), 2010 WL 988537 (D.N.J. Mar. 12, 2010) ................11, 13

*Hirsch v. Miles*,
  No. 21-12246 (FLW), 2022 WL 395816 (D.N.J. Feb. 9, 2022)....................15

*Kennilworth Partners L.P. v. Cendant Corp.*,
  59 F. Supp. 2d 417 (D.N.J. 1999) .........................................................18, 19, 20

*Lento v. Altman*,
  No. 22-4840 (RBK/EAP), 2023 WL 4232158 (D.N.J. June 27, 2023) .........14

*In re Lernout & Hauspie Securities Litigation*,
  230 F. Supp. 2d 152 (D. Mass. 2002) ...........................................................10

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993)............................................................................13

*Livingston v. Trane Inc.*,
  No. 17-6480 (ES) (MAH), 2019 WL 397982 (D.N.J. Jan. 31, 2019) ...........16

*Lum v. Bank of America*,
  361 F.3d 217 (3d Cir. 2004)..........................................................................11

*Malleus v. George*,
  641 F.3d 560 (3d Cir. 2011)...............................................................4, 5, 7, 18

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010)............................................................................5

*Monsen v. Consolidated Dressed Beef Co., Inc.*,
  579 F.2d 793 (3d Cir. 1978)..........................................................................17

*United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
    812 F.3d 294 (3d Cir. 2016)..................................................................................5

*Nappier v. PricewaterhouseCoopers LLP*,
    227 F. Supp. 2d 263 (D.N.J. 2002) .......................................................................19

*Nelson v. Clausen*,
    No. 23-01896 (RK) (JBD), 2024 WL 4249730 (D.N.J. Sept. 20, 2024) ................6

*Northeast Revenue Services, LLC v. Maps Indeed, Inc.*,
    685 F. App'x 96 (3d Cir. 2017) .......................................................................11, 12

*Nype v. Spitz*,
    No. 20-13680 (MAS) (TJB), 2022 WL 329321 (D.N.J. Feb. 3, 2022) .................16

*Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc.*,
    998 F.2d 1192 (3d Cir. 1993)................................................................................5

*Reiger v. PricewaterhouseCoopers*,
    117 F. Supp. 2d 1003 (S.D. Cal. 2000).................................................................19

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).........................................................................11, 12, 13, 18

*In re Rockefeller Center Properties, Inc. Securities Litigation*,
    311 F.3d 198 (3d Cir. 2002)..................................................................................5

*Rocker Management LLC v Lernout & Hauspie Speech Products, NV*,
    No. 00-5965(JCL), 2005 WL 1365772 (D.N.J. Jun. 8, 2005) ...........................8, 10

*In re Royal Ahold N.V. Securities & ERISA Litigation*,
    351 F. Supp. 2d 334 (D. Md. 2004) ......................................................................9

*In re Royal Dutch/Shell Transport Securities Litigation*,
    380 F. Supp. 2d 509 (D.N.J. 2005) ....................................................................8, 10

*Royale Luau Resort, LLC v. Kennedy Funding, Inc.*,
    No. 07-1342 (HAA), 2008 WL 482327 (D.N.J. Feb. 19, 2008)...........................15

*In re SCB Computer Technology, Inc. Securities Litigation*,
    149 F. Supp. 2d 334 (W.D. Tenn. 2001)...............................................................19

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)..................................................................................5

*Sheeran v. Blyth Shipholding S.A.*,
    No. 14-5482 (JBS/AMD), 2015 WL 9048979 (D.N.J. Dec. 16, 2015) ..................6

*Skidmore Energy, Inc. v. KPMG*,
  No. Civ.A.3:03CV2138-B, 2004 WL 3019097 (N.D. Tex. Dec. 28, 2004) ............................9

*Snyder v. Dietz & Watson, Inc.*,
  837 F. Supp. 2d 428 (D.N.J. 2011) .......................................................................................11

*Star Energy Corp. v. RSM Top-Audit*,
  No. 08 Civ. 00329 (DC), 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008) ...............................9

*Stevenson v. Thornburgh*,
  No. 23 Civ. 4458 (CM), 2024 WL 645187 (S.D.N.Y. Feb. 14, 2024) ..............................8, 10

*In re Suprema Specialties, Inc. Securities Litigation*,
  438 F.3d 256 (3d Cir. 2006)..................................................................................................16

*Tarr v. Ciasulli*,
  853 A.2d 921 (N.J. 2004).......................................................................................................17

*Travelers Indemnity Co. v. Cephalon, Inc.*,
  620 F. App'x 82 (3d Cir. 2015) .............................................................................................16

*Tuttle v. Sky Bell Asset Management, LLC*,
  No. C 10-03588 WHA, 2011 WL 4713233 (N.D. Cal. Oct. 7, 2011) ......................................9

*University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*,
  996 F.2d 1534 (3d Cir. 1993)................................................................................................12

*Verify Smart Corp. v. Bank of America*, N.A.,
  No. 17-4248 (JMV) (JBC), 2020 WL 3542430 (D.N.J. June 29, 2020)................................13

*West Run Student Housing Associates, LLC v. Huntington National Bank*,
  712 F.3d 165 (3d Cir. 2013)....................................................................................................4

*Willekes v. Serengeti Trading Co.*,
  No. 13-CV-7498 (ES) (MAH), 2016 WL 5334522 (D.N.J. Sept. 22, 2016).........................14

*Zavala v. Wal-Mart Stores, Inc.*,
  393 F. Supp. 2d 295 (D.N.J. 2005) .......................................................................................14

**Statutes and Rules**

18 U.S.C. § 1962(c) ....................................................................................................10, 11, 13

18 U.S.C. § 1962(d) ........................................................................................................10, 13

FRCP 8(a) ...................................................................................................................1, 6, 8

FRCP 9(b) ..................................................................................................................... *passim*

FRCP 12(b)(6) ..............................................................................................................1, 4, 5

N.J.S.A. § 2A:53A-25(b) .............................................................................................15, 16

**Treatises and Periodical Materials**

5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357
    (3d ed. 2004) .....................................................................................................................5

Restatement (Second) of Torts § 876(b) .......................................................................17

Defendant Ernst & Young U.S. LLP (referred to in the Complaint as "EY USA") moves to dismiss the claims against it in Plaintiffs' *First Amended Class Action Complaint* (the "Complaint" or "Compl.," ECF No. 3). The Complaint claims that the central bank of Lebanon and more than two dozen other Lebanese banks defrauded Plaintiffs into depositing U.S. dollars into Lebanese accounts, from which the Plaintiffs cannot make withdrawals, and that several accounting firms aided the fraud by performing negligent audits of certain of the banks. The Complaint names EY USA as a defendant, but does not allege that EY USA knew about or participated in any Lebanese fraud, audited any Lebanese bank, or did or failed to do anything in Lebanon or anywhere else. In fact, the Complaint does not allege that EY USA did anything at all.

The Complaint claims that EY USA is liable, not for its own conduct, but for that of another firm, "EY's Lebanon affiliate" ("EY Lebanon"), which allegedly audited two Lebanese banks. The Complaint seeks to hold EY USA liable for EY Lebanon's audits based on a conclusory—and false—allegation that EY USA, EY Lebanon, and all of the other firms in more than one hundred and fifty countries around the world that belong to the Ernst & Young network are a "single entity."[1] But in a line of precedents spanning decades, courts have uniformly rejected this "single entity" theory.

As demonstrated below, for this reason and two others the claims against EY USA should be dismissed pursuant to Rules 8(a), 9(b), and 12(b)(6): (1) EY USA is not liable for EY Lebanon's alleged acts; (2) the Complaint fails to plead the elements of any claim against EY USA; and (3) even if the Court were to attribute EY Lebanon's alleged acts to EY USA, the Complaint fails to plead the elements of any claim.

---

1. *Our locations*, EY, https://www.ey.com/en_gl/locations (last visited Nov. 21, 2024).

## STATEMENT OF FACTS

The Complaint alleges a sprawling fraud in which EY USA is not alleged to have played any role whatsoever.  The pleading alleges that the Lebanese central bank, Banque du Liban ("BDL"), conspired with Lebanese commercial banks to induce Plaintiffs to make deposits into dollar-denominated accounts in Lebanon.  The Lebanese banks "began offering remarkably high interest rates starting in or around 2016 in an effort to reverse increase [*sic*] the dwindling remittances and restore their dollar reserves."  (Compl. ¶ 8.)  The Complaint alleges that this was "part of a scheme" that "eventually collapsed" leaving Plaintiffs unable to withdraw their deposits. (*Id*. ¶¶ 8-9.)

EY USA is a Delaware limited liability partnership with its principal place of business in New York.  (Compl. ¶ 42.)  EY USA is a member of the Ernst & Young Global Limited ("EYG") network of firms.  (*Id*.)  The Complaint's only allegation of fact concerning EY USA is that EY USA "is the United States member firm . . . of the multinational consortium of professional services firms known as 'EY,' one of the largest professional services networks of its kind in the world."  (*Id*.)  The Complaint alleges no facts contradicting the statements on EY USA's and EYG's websites that each member firm in the EY network "is a separate legal entity."[2]

The Complaint does not allege that EY USA had anything to do with any Lebanese bank. On the contrary, Paragraph 42 expressly alleges that another firm, "EY's Lebanon affiliate,"

---

2.  EY, https://www.ey.com/en_us (last visited Nov. 21, 2024).  The EY USA website states that the "member firms of EYG operating in North, Central and South America, as well as Ernst & Young (Israel) Ltd. (the 'Americas Area Firms'), are separate and independent legal entities that are, directly or indirectly, members of Ernst & Young Americas LLC."  *Legal Statement*, EY, https://www.ey.com/en_us/legal-and-privacy/legal-statement (last visited Nov. 21, 2024). It also states that the "member firms of EYG that operate in Europe, the Middle East, India and Africa (the 'EMEIA Firms')," which include EY Lebanon, "are separate and independent legal entities and are in part, directly or indirectly, members of Ernst & Young EMEIA Limited." *Id.* EYG's website includes the same statement."  *Legal Statement*, EY, https://www.ey.com/en_gl/legal-and-privacy/legal-statement (last visited Nov. 21, 2024).

audited the financial statements of BDL and Byblos Bank, S.A.L. ("Byblos"). (Compl. ¶ 42.)[3] Elsewhere, the Complaint alleges that "EY" audited Byblos and BDL (*see id.* ¶ 97 (2018 audit of BDL); *id.* ¶¶ 196, 198-99 (Byblos audits); *id.* ¶¶ 204-06 (same); *id.* ¶¶ 211-214 (BDL audits); *id.* ¶¶ 221-22 (same). All these allegations about "EY" refer to audits by EY Lebanon ("EY's Lebanese affiliate"), apparently conflating EY Lebanon with all the other firms in the EYG (or "EY") network of firms in more than one hundred fifty countries.

Similarly, the Complaint lumps EY USA in with other accounting firm defendants. (Compl. pp. 10-11 ("Accounting Defendants"); *id.* ¶ 43 ("Byblos Accounting Defendants"); *id.* ¶ 44 ("BDL Accounting Defendants").) The allegations against these groups all relate to the audits of Lebanese banks in which EY USA did not participate and is not alleged to have participated. (Compl. ¶¶ 66, 213.)[4] Paragraph 42 alleges that "EY operates, effectively, as a single entity," the "BDO" network of firms is a "single entity," and the "Deloitte" network is a "single entity." Based on the allegations that each of these networks is a "single entity," the Complaint claims that the U.S. member firms of each network, *i.e.*, EY USA, BDO USA, and Deloitte USA, "are liable for the tortious conduct of their affiliates in other regions." (*Id.* ¶¶ 201, 208, 217.) Thus, the Complaint seeks to hold the U.S. firms liable for the alleged conduct of the Lebanese member firms of their respective networks. Based on this theory that EY USA is liable for EY Lebanon's

---

3. The Complaint does not name EY Lebanon as a defendant or even state its full name. However, the Alvarez & Marsal Middle East Limited Preliminary Forensic Audit Report on Banque Du Liban, dated August 7, 2023, upon which the Complaint relies (Compl. ¶ 100), identifies EY Lebanon thus: "Ernst & Young p.c.c., Beirut, Lebanon" audited BDL's financial statements for the years-ending December 31, 2015 through 2018 (A&M Rep. § 3.4.1 n.27).

4. The Complaint alleges that the "BDL Accounting Defendants," EY Lebanon and Deloitte Lebanon, qualified their report on BDL's 2018 financial statements, but that the qualification and the "exceptions noted by the BDL Accounting Defendants were too little too late." (Compl. ¶ 97.) The A&M Report states that, in fact, EY Lebanon and Deloitte Lebanon issued qualified opinions on BDL's financial statements for <u>every year</u> from 2015 through 2018. (A&M Rep. §§ 3.4.1-3.4.2.)

audits of two Lebanese banks, the Complaint purports to state claims against EY USA for RICO violations (First Cause of Action), and common law claims for unjust enrichment (Sixth Cause of Action), negligence (Eighth and Tenth Causes of Action), and aiding and abetting fraud (Ninth and Eleventh Causes of Action).

## LEGAL STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. A plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

To determine the sufficiency of a complaint, a court must take three steps. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 664, 675, 679). *First*, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. *Second*, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. *Third*, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563.

A court may consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)), as well as items subject to judicial notice, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).  A court may also consider "undisputedly authentic documents if the complainant's claims are based upon these documents," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), and any document "integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud."  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue."  *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props.,* 311 F.3d at 217); *see also Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) ("[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation'") (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud."  *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation omitted).

Even under Rule 8(a), the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). "[V]ague references to defendants as a group and asserting 'general common factual allegations against all of them' is impermissible group pleading." *Nelson v. Clausen*, No. 23-01896 (RK) (JBD), 2024 WL 4249730, at *5 (D.N.J. Sept. 20, 2024) (quoting *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482 (JBS/AMD), 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (dismissing complaint for failure to satisfy Rule 8 "because the allegations [did] not inform each Defendant of the particular claims against it" and "lumping all defendants together for different misconduct fail[ed] to demonstrate each defendant's individual liability") and citing *ATR Paper Inc. v. Bangkit (U.S.A.), Inc.*, No. 23-12696 (BRM) (SDA), 2024 WL 3518119, at *4 (D.N.J. July 24, 2024) (dismissing counterclaims on group pleading grounds where it was "impossible to ascertain from the counterclaims what actions were taken directly" by one defendant or another) (other citations omitted)); *see also United States ex rel. Bennett v. Bayer Corp.*, No. 17-4188 (ES) (JBC), 2022 WL 970219, at *7 (D.N.J. Mar. 31, 2022) (allegations that fail to distinguish between distinct defendants amount to impermissible group pleading); *Galicki v. New Jersey*, No. 14-169 (JLL), 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (mere "conclusory allegations against [d]efendants as a group," which "[fail] to allege the personal involvement of any [d]efendant," are insufficient to survive a motion to dismiss) (citation omitted).

## ARGUMENT

### I.     EY USA IS NOT LIABLE FOR THE ALLEGED ACTS OF EY LEBANON

The Complaint does not allege that EY USA had anything to do with the audits at issue, let alone any fraud. To the contrary, the Complaint alleges that "EY's" "Lebanon affiliate"—not EY USA—was one of two auditors of two Lebanese banks, BDL and Byblos. (Compl. ¶ 42.)[5]

---

5.  The other firms that allegedly audited BDL's and Byblos's financial statements were Lebanese affiliates of Deloitte and BDO, respectively. (Compl. ¶¶ 40-41.) Two firms issued one joint opinion on each bank's financial statements each year.

The Complaint alleges that EY USA is nevertheless liable "for the tortious conduct of [its] affiliates in other regions." (*Id.* ¶ 201.)  This claim of vicarious liability is predicated on EY USA's membership in the "EY" network, which is "one of the largest professional services networks of its kind in the world." (*Id.* ¶ 42.)  The Complaint alleges that the EY network of firms in more than one hundred fifty countries is an "integrated international professional firm[] that tout[s itself], and operate[s], as a *de facto* single entity." (Compl. ¶¶ 201, 208, 217, 224.)

The allegation that the EY network of firms is a "single entity" is entirely conclusory and therefore is "not entitled to the assumption of truth." *Malleus*, 641 F.3d at 563 (3d Cir. 2011) (citation omitted).  The Complaint alleges no facts contradicting EY USA's and EYG's website disclosures, of which the Court may take judicial notice, that each member firm of the EYG network "is a separate legal entity."[6]  On the contrary, the Complaint relies on the forensic report of Alvarez & Marsal, which identifies EY Lebanon as a Lebanese legal entity, Ernst & Young p.c.c., Beirut, Lebanon. (*See* Note 3, above.)  The Complaint's "naked assertion" that all EY firms are a single entity, which is devoid of "further factual enhancement," is insufficient as a matter of law. *Iqbal*, 556 U.S. at 678.[7]  Other than membership in the EYG network, the Complaint alleges no connection whatsoever between EY USA and EY Lebanon, and certainly no connection with respect to the audits at issue.

Bringing claims against EY USA based merely on the fact that both EY USA and EY Lebanon are members of the EYG network is impermissible.  Courts routinely dismiss claims alleging that one member of a global network is liable for the acts of another member based merely

---

6.  *Legal Statement*, EY, https://www.ey.com/en_us/legal-and-privacy/legal-statement (last visited Nov. 21, 2024); *Legal Statement*, EY, https://www.ey.com/en_gl/legal-and-privacy/legal-statement (last visited Nov. 21, 2024).

7.  Similarly, the Complaint alleges that, "[a]s part of EY, [the] Lebanese affiliate shared a percentage of its revenues and profits with the global EY entity." (Compl. ¶ 42.)  This allegation too is entirely conclusory, and is addressed to "the global EY entity," not EY USA.

on their membership in the same network.  Dismissal of such "single entity" or "one firm" claims is warranted under both Rule 8—for failure to allege facts "showing that the pleader is entitled to relief," *see, e.g., Stevenson v. Thornburgh*, No. 23 Civ. 4458 (CM), 2024 WL 645187, at *15 (S.D.N.Y. Feb. 14, 2024) (collecting cases)—and Rule 9(b)—for failure to meet its heightened pleading standard, *see, e.g., Rocker Mgmt. LLC v Lernout & Hauspie Speech Prods., NV*, No. 00-5965(JCL), 2005 WL 1365772, at *8 (D.N.J. Jun. 8, 2005) (holding that "lumping together" "KPMG offices under one 'KPMG' reference offends the particularity requirements" of Rule 9(b) and the Private Securities Litigation Reform Act).

Applying the pleading requirements of Rules 8 and 9, courts have dismissed "single entity" claims involving various global networks, including those of KPMG, PricewaterhouseCoopers ("PwC"), Deloitte, RSM, and EYG.  In *In re Royal Dutch/Shell Transport Securities Litigation*, the District Court dismissed claims against KPMG International and PwC International where the complaint made plain that neither of those entities performed the relevant audits, and the only basis for naming them as defendants was the "one-firm" theory.  380 F. Supp. 2d 509, 571-72 (D.N.J. 2005).  The District Court held that it "is well recognized that '[m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name."  *Id*. at 571. (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 385 (D. Md. 2004)).

Similarly, in *Tuttle v. Sky Bell Asset Management, LLC*, the court refused to impute the contacts of all Ernst & Young entities globally to the defendant, Ernst & Young LLP, an Isle of Man entity, and found that there was "no *alter ego* or agency relationship between" the defendant Isle of Man firm "and any other Ernst & Young entity."  C 10-03588 WHA, 2011 WL 4713233, at *7-8 (N.D. Cal. Oct. 7, 2011).  And in *Goh v. Baldor Electric Company*, in denying a motion to compel Ernst & Young LLP, a U.S. firm, to produce documents of other EY member firms, the court noted that, other "than shared membership in the common association of Ernst & Young

14

International, Ernst & Young LLP, Ernst & Young Singapore, and Ernst & Young Thailand are separate entities," organized under the laws of different countries, each of which "controls its own resources, maintains separate profit pools, and holds different partners, members, and management."  No. 3:98-MC-064-T, 1999 WL 20943, at *3 (N.D. Tex. Jan. 13, 1999) (citation omitted); *see also Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329 (DC), 2008 WL 5110919, at *5 (S.D.N.Y. Nov. 26, 2008) (dismissing claims against RSM International relating to audits performed by another RSM network member firm); *Skidmore Energy, Inc. v. KPMG*, No. Civ.A.3:03CV2138-B, 2004 WL 3019097, at *4 (N.D. Tex. Dec. 28, 2004) ("KPMG contends that the Plaintiffs' allegations that KPMG was acting as a 'worldwide organization' are 'insufficient as a matter of law to state a claim against KPMG LLP for the acts of the KPMG member firm in Morocco'—and points out that numerous courts addressing similar allegations 'have required plaintiffs to plead substantially more than a bare bones 'unified company theory.' . . . The Court agrees.") (citations omitted); *In re Royal Ahold*, 351 F. Supp. At 411 n.41 (finding that "Deloitte U.S. and Deloitte Netherlands are legally distinct, autonomous firms" and that even the alleged sharing of information and certain coordinated efforts did not "support a finding that the two firms operated as one entity[]"); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170-73 (D. Mass. 2002) (dismissing claims against KPMG International, despite pleading public relations materials proclaiming firm unity and the firm being a "global entity," where there were no "specific allegations" to show that KPMG International was responsible for the audits performed by another member firm).  Here, the Complaint alleges no facts upon which EY Lebanon's conduct could be attributed to EY USA.  The Complaint pleads nothing but "naked assertion[s]" of a "single entity" theory devoid of "further factual enhancement."  Under *Stevenson, Rocker, Royal Dutch Shell,* and the other cases discussed above, the pleading therefore provides no basis to attribute EY Lebanon's conduct to EY USA.  Since EY USA is not responsible for that alleged conduct and there are no independent allegations against EY USA the Court should dismiss the claims against EY USA.

## II.    THE COMPLAINT SHOULD BE DISMISSED
##        FOR FAILURE TO STATE A CLAIM

### A.    The Complaint Fails to State a RICO Claim
###        Against EY USA (First Cause of Action).

The Complaint asserts a claim for violations of sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against "all Defendants."  (Compl. ¶ 117.)[8] Plaintiffs must plead these claims with particularity both because allegations of fraud implicate Rule 9(b)'s heightened pleading standard and because RICO itself requires specificity.  *See, e.g., Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004); *Capital Health Sys., Inc. v. Veznedaroglu*, No. 15-8288 (MAS) (LHG), 2017 WL 751855, at *12 (D.N.J. Feb. 27, 2017).  As discussed below, the Complaint fails to satisfy the heightened pleading requirements as to each essential element of the RICO claims.

#### 1.   The Complaint fails to state a claim
####       against EY USA under Section 1962(c)

To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," and at least two predicate acts of racketeering in a 10-year period.  *Northeast Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 101 (3d Cir. 2017) (citation omitted).  A "racketeering activity" is "any act or threat involving specified state law crimes, or any act indictable under various specified federal statutes,

---

8.  Although the heading for the RICO claim indicates that the claim is asserted against "all Defendants" (Compl. p. 28), the RICO section of the Complaint action makes no specific or even general reference to EY USA or any other accounting firm and the Complaint's explanation of the "membership and roles of each class of participant" in the RICO enterprise lists only Defendants BDL, Salameh, and the Commercial Bank Conspirators.  (*See* Compl. ¶ 123.)  It is thus unclear whether the Complaint is actually asserting that EY USA is liable for a RICO violation.  However, given the statement in the heading that the claim is purportedly directed at "all Defendants," EY USA seeks dismissal of the claim as against it.

and certain federal offenses." *Grant v. Turner*, No. 09-2381 (JAG), 2010 WL 988537, at *6 (D.N.J. Mar. 12, 2010) (citation and quotation omitted).

The Complaint alleges wire fraud, mail fraud and money laundering as the "predicate acts" allegedly establishing a pattern of racketeering. (Compl. ¶ 126(a)-(c).) But the Complaint contains no allegation that EY USA engaged in any such acts, or in any racketeering activity, or that EY USA participated in the conduct of the alleged enterprise. This alone is fatal to the RICO claim against EY USA. *See Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993) (RICO liability can only attach to those who "participate in the operation or management of the enterprise itself").

Instead of pleading with particularity how EY USA was involved in the alleged enterprise, the Complaint impermissibly lumps all Defendants together and broadly accuses all the Defendants of engaging in the same misconduct without particularized facts as to the involvement of each. *See Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J. 2011) (dismissing RICO claims where plaintiff "lump[ed] all three defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions"). For example, the Complaint alleges that "Defendants and the Non-Party Bank Co-conspirators, in violation of RICO, conducted (managed) or participated, directly or indirectly, in the conduct (management) of the Lebanese Banking Enterprise, through a pattern of unlawful or otherwise prohibited activity." (Compl. ¶ 119.) This conclusory allegation against all of the Defendants does not come close to providing the specificity required to plead a RICO claim based on alleged fraud. The Third Circuit has long held that Rule 9(b) requires pleading "the date, place or time of the fraud" or some alternative "precision" and "measure of substantiation" in allegations of fraud. *Northeast Revenue Servs.*, 685 F. App'x at 102 (internal quotation omitted). The Complaint is fatally missing any detail concerning any misconduct by EY USA—the Complaint contains no facts describing what specific fraudulent acts EY USA participated in, what and to whom specific

representations were made, or at what specific places and times, and is devoid of the necessary "precision" and "measure of substantiation" required to support a claim.

Nor does the Complaint plead that EY USA played any part in conducting or directing the alleged "enterprise." In *Reves*, the Supreme Court held that, "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, . . . one must participate in the operation or management of the enterprise itself," 507 U.S. at 185 (quotation and citation omitted), and that providing audit services does not meet this "conduct or participate" requirement, *id.* at 186. "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result"; rather, "the person must knowingly engage in *directing* the enterprise's affairs through a pattern of racketeering activity." *Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (quotation and citation omitted). The Complaint does not allege that EY USA or any other accounting firm conducted or participated in the operation or management of BDL or Byblos or any enterprise. There is no allegation that EY USA did anything at all. And, wholly apart from the fact that EY USA is not liable for the conduct of EY Lebanon (Section I, above), the only allegations against EY Lebanon are that it performed audits. Under *Reves,* performing audits is insufficient as a matter of law to satisfy the "conduct or participate" element of liability under Section 1962(c), and the claim should therefore be dismissed.

### 2. The Complaint fails to state a claim against EY USA under Section 1962(d)

The Complaint's RICO conspiracy claim against EY USA fares no better. *First*, Courts routinely dismiss conspiracy claims where, as here, the underlying RICO claim is deficient. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Verify Smart Corp. v. Bank of Am*., *N.A.*,

No. 17-4248 (JMV) (JBC), 2020 WL 3542430, at *6 (D.N.J. June 29, 2020) (dismissing RICO conspiracy claim based on failure "to establish a substantive RICO claim").

*Second*, the conspiracy claim also fails because the Complaint does not allege that EY USA was party to any "(1) agreement to commit the predicate acts of fraud," or that EY USA had (2) "knowledge that those acts were a part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)." *Grant*, 2010 WL 988537, at *11. Here, the Complaint fails to plead the first element because it does not plead the existence of any agreement at all, much less facts plausibly suggesting that EY USA was a party to such agreement or detailing the specific "objectives" of the alleged agreement. *See Capers v. FedEx Ground*, No. 2:02-CV-5352 (WJM), 2012 WL 2050247, at *4 (D.N.J. June 6, 2012) (dismissing RICO conspiracy claim because plaintiffs "fail[ed] to allege facts" showing "an agreement").

The Complaint also fails to plead the second element, knowledge of the conspiracy. The Complaint fails to show that EY USA knew of any racketeering activity, knew of any alleged acts to achieve the purpose of a conspiracy, or knew that any alleged acts were part of a pattern of racketeering activity. The failure to plead the elements of a RICO conspiracy claim requires dismissal of the claim. *See Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 316-17 (D.N.J. 2005) (dismissing RICO claim where the plaintiffs failed to allege, other than in conclusory fashion, facts showing that the defendants conspired to commit the unlawful acts); *Lento v. Altman*, No. 22-4840 (RBK/EAP), 2023 WL 4232158, at *6 (D.N.J. June 27, 2023) (dismissing RICO conspiracy claim where the complaint failed to "allege anything remotely close to actions [the defendants] took to achieve the alleged conspiracy's purpose" or that the defendants "knew those unpled actions were part of a pattern of racketeering activity").

**B.**     **The Complaint Fails to State a Claim for Unjust Enrichment Against EY USA (Sixth Cause of Action).**

To state a claim for unjust enrichment, the Complaint must allege a direct relationship between the parties, that the Plaintiffs conferred a direct benefit on EY USA, and that EY USA's retention of that benefit would be unjust.  *See Willekes v. Serengeti Trading Co.*, No. 13-CV-7498 (ES) (MAH), 2016 WL 5334522, at *14 (D.N.J. Sept. 22, 2016) (citations omitted).  The Complaint fails to plead any of these elements against EY USA.  The only allegations even remotely relevant to unjust enrichment are that, as "part of EY," EY Lebanon "shared a percentage of its revenues and profits with the global EY entity" (Compl. ¶ 42), and that the "BDL Accounting Defendants and Byblos Accounting Defendants . . . should not in good conscience be able to keep the professional fees and other remuneration received for their work" (*id*. ¶ 188).  The Complaint fails to allege that any Plaintiff had a direct relationship with EY USA or that any Plaintiff provided any benefit to EY USA or paid anything to EY USA.  Nor does the Complaint allege that EY Lebanon shared any of the professional fees that it received from BDL or Byblos with EY USA. The Complaint's unjust enrichment claim against EY USA is therefore insufficient as a matter of law and should be dismissed.  *See Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. 07-1342 (HAA), 2008 WL 482327, at *11 (D.N.J. Feb. 19, 2008).[9]

**C.**     **The Complaint Fails to State a Claim For Negligence Against EY USA (Eighth and Tenth Causes of Action).**

To plead a claim for negligence, the Complaint would need to allege that: (1) EY USA owed a duty of care to Plaintiffs, (2) EY USA breached that duty, (3) the breach was a proximate cause of Plaintiffs' injuries, and (4) Plaintiffs suffered actual compensable injuries as a result.

---

9.  To the extent the Complaint's unjust enrichment claim centers on allegedly fraudulent conduct, Rule 9(b) requires that the Complaint state the fraudulent acts underlying the unjust enrichment claims with particularity, which the Complaint fails to do.  *See Crete v. Resort Condos. Int'l, LLC*, No. 09-5665, 2011 WL 666039, at *5-6 (D.N.J. Feb. 14, 2011).

*Hirsch v. Miles*, No. 21-12246 (FLW), 2022 WL 395816, at *3 (D.N.J. Feb. 9, 2022).   The Complaint fails to plead that EY USA owed the Plaintiffs a duty of care, let alone that EY USA breached that duty.   Under the New Jersey Accountant Liability Act (the "Act"), "no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless: (1) The claimant against the accountant *was the accountant's client. . . .*"   N.J.S.A. § 2A:53A-25(b) (emphasis added).   Since no Plaintiff was a client of EY USA, the firm cannot be held liable for damages for negligence unless the exception to the foregoing rule applies.   To meet that exception, the Act requires that the accountant:

> (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was *specifically identified* to the accountant *in connection with a specified transaction* made by the claimant;
>
> (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; *and*
>
> (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service. . . .

N.J.S.A. § 2A:53A-25(b)(2) (emphasis added); *see also Nype v. Spitz*, No. 20-13680 (MAS) (TJB), 2022 WL 329321, at *4 (D.N.J. Feb. 3, 2022) ("The Act limits an accountant's liability to non-clients. . . .   Negligent performance of accounting services does not give rise to liability to non-clients.") (citation omitted); *E. Dickerson & Son, Inc. v. Ernst & Young, LLP*, 179 N.J. 500, 502-04 (N.J. 2004).   The Complaint does not allege that any Plaintiff was specifically identified to EY USA at all, let alone in connection with a specific transaction.   Nor does the Complaint allege that EY USA knew that any Plaintiff intended to rely on the audits at issue or that EY USA directly expressed to any Plaintiff its understanding of the Plaintiff's intended reliance.   Accordingly, the

Complaint fails to state a claim for negligence against EY USA.  *See E. Dickerson & Son,* 179 N.J. at 502-04.[10]

### D.    The Complaint Fails to State a Claim for Aiding and Abetting Fraud Against EY USA (Ninth and Eleventh Causes of Action)

To state a claim for aiding and abetting fraud, the Complaint must plead that: (1) there was an underlying fraud; (2) the defendant had knowledge of the fraud and its role in the fraud; and (3) the defendant knowingly provided substantial assistance or encouragement in the fraud.  *See Delzotti v. Morris*, No. 14-7223 (JBS/AMD), 2015 WL 5306215, at *8 (D.N.J. Sept. 10, 2015); *Cammer v. Bloom*, 711 F. Supp. 1264, 1296 (D.N.J. 1989) (citing *Monsen v. Consol. Dressed Beef Co., Inc.*, 579 F.2d 793, 799 (3d Cir. 1978), *cert. denied*, 439 U.S. 930 (1978)); *see also Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (noting that New Jersey has adopted a definition of civil aiding and abetting liability consistent with the Restatement (Second) of Torts § 876(b));

---

10. As with the Complaint's unjust enrichment claims, the Complaint's negligence claims are subject to Rule 9(b)'s heightened pleading requirements.  Although Rule 9(b) is inapplicable where claims "are expressly premised on negligence rather than fraud," *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 272 (3d Cir. 2006), that is only the case where the plaintiff has "exercised care in differentiating asserted negligence claims from fraud claims and in delineating the allegations that support the negligence cause of action as distinct from the fraud," *id*. at 273.  Where, as here, a complaint incorporates fraud-like allegations for a negligence claim, that claim may sound in fraud and therefore be subject to Rule 9(b), no matter the label applied to the claim. *See id*. at 274; *see also Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015); *Livingston v. Trane Inc.*, No. 17-6480 (ES) (MAH), 2019 WL 397982, at *3 (D.N.J. Jan. 31, 2019).  Here, the Complaint does not take care to differentiate between allegations supporting the negligence and aiding and abetting fraud claims.  To the contrary, the Complaint bases the claims on identical alleged facts.  (*See, e.g.*, Compl. ¶ 66 ("The Accounting Defendants were woefully negligent in performing their responsibilities as auditors of Byblos. . . .  The Byblos Accounting Defendants provided substantial assistance to Byblos in its fraudulent scheme to inflate its own financials, and Byblos' participation in BDL's fraudulent scheme to entice depositors to deposit dollars with Byblos and the other Commercial Bank Conspirators."); *id*. ¶ 103 ("The BDL Accounting Defendants completely failed to apply applicable accounting principles in their annual audits of BDL's financials.  The BDL Accounting Defendants were negligent in performing their responsibilities.  They knew that BDL was engaged in fraud, and provided substantial assistance to BDL in its fraudulent course of conduct.").)  The negligence claims are therefore subject to—and fail to meet—Rule 9(b)'s heightened pleading standard.

Restatement (Second) of Torts § 876(b); *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004).  The Complaint contains no allegations, let alone specific facts, that EY USA had knowledge of any fraud or knowingly assisted or encouraged any fraud.  Accordingly, the aiding and abetting fraud claims against EY USA should be dismissed.

**E.    The Complaint Fails to State a Claim Based on EY Lebanon's Conduct**

Even if, notwithstanding the law described in Section I, above, the Court were to attribute EY Lebanon' actions to EY USA, the Complaint would still fail to state a claim.  That is because the Complaint fails to allege facts to plead key elements of each claim as to EY Lebanon:

- The RICO claim fails because the Complaint fails to plead that EY Lebanon played any part in conducting or directing the alleged "enterprise" because providing audit services does not meet the "conduct or participate" requirement.  *Reves*, 507 U.S. at 185.  The Complaint also fails to allege facts showing that EY Lebanon was part of the alleged RICO conspiracy.

- The unjust enrichment claim fails because the Complaint fails to allege that Plaintiffs conferred any benefit on EY Lebanon or expected anything from EY Lebanon.

- The negligence claims fail because the Complaint fails to plead that EY Lebanon owed Plaintiffs any duty or was in privity with any Plaintiff.  The Complaint also fails to allege that any Plaintiff was specifically identified to EY Lebanon, let alone in connection with a specific transaction.  Nor does the Complaint allege that EY Lebanon knew that any Plaintiff intended to rely on the audits at issue, or that EY Lebanon directly expressed to any Plaintiff its understanding of the Plaintiff's intended reliance.

Finally, the Complaint also fails to allege facts sufficient to support the conclusion that EY Lebanon aided and abetted any fraud by Byblos or BDL because the Complaint fails to allege that EY Lebanon had knowledge of any fraud or knowingly assisted or encouraged any fraud. The fraud allegations against the "Accounting Defendants" are wholly conclusory. (Compl. ¶¶ 66, 205, 103, 220, 221, 222.) Because these allegations "are no more than conclusions," they "are not entitled to the assumption of truth." *Malleus*, 641 F.3d at 563 (citing *Iqbal*, 556 U.S. at 679). These allegations fail the most basic requirement of Rule 9(b) by improperly lumping the accounting defendants together. *See Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 430 (D.N.J. 1999) (by "lump[ing] the defendants together and mak[ing] general conclusory allegations of wrongdoing" plaintiffs did "not afford the defendants the necessary opportunity to know exactly of what each [was] accused").

Even if the allegations were deemed to be alleged against EY Lebanon specifically, they are insufficient to withstand a motion to dismiss. The Complaint fails to allege facts establishing that EY Lebanon had any fraudulent intent. Entirely missing are specific facts illustrating that EY Lebanon had motive to commit fraud or facts providing strong circumstantial evidence of conscious misbehavior or recklessness. *See, e.g., Nappier v. PricewaterhouseCoopers LLP*, 227 F. Supp. 2d 263, 275 (D.N.J. 2002) (a plaintiff may establish the requisite inference of fraudulent intent by alleging either motive and an opportunity to commit fraud or facts that constitute circumstantial evidence of either recklessness or conscious behavior) (citations omitted); *Kennilworth*, 59 F. Supp. 2d at 429 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997) (further citation omitted)). On the contrary, any putative inference that EY Lebanon had knowledge of and participated in a fraud by Byblos or BDL is belied by the fact that EY Lebanon issued qualified and adverse opinions, respectively, on BDL's and Byblos's financial statements. (Compl. ¶¶ 94, 97.)

Nor does the allegation that EY Lebanon had access to BDL's and Byblos's books and records support the aiding and abetting claim. *See Nappier*, 227 F. Supp. 2d at 276 (allegations based on what PwC "must have known" by virtue of its role as auditor were insufficient to permit an inference that PwC knew of the allegedly deceptive practices) (citing *In re SCB Computer Technology, Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 360 (W.D. Tenn. 2001) (accountants' access to "contracts and documents that allegedly revealed improper revenue recognition" insufficient to permit a strong inference of scienter); *Reiger v. PricewaterhouseCoopers*, 117 F. Supp. 2d 1003, 1011 (S.D. Cal. 2000) ("The Court finds Plaintiffs' argument—that because Pricewaterhouse had access to Altris' contract files, it must have known of the GAAP violations—wholly without merit.") (further citations omitted)); *Kennilworth*, 59 F. Supp. 2d at 429 (noting that allegations that EY personnel were "frequently present at [the client's] corporate headquarters throughout the year, and had continual access to and knowledge of [the client's] confidential corporate financial, operating and business information," were insufficient to support an inference of scienter since these statements "could be made in relation to the auditor of every corporation" and, if they "were sufficient to plead scienter, it might make every auditor liable in cases of securities fraud"). As was the case with the auditors in *Cammer*, the Complaint here asserts nothing "from which a reasonable inference could be drawn that [EY Lebanon] had 'thrown in' with the [bank defendants] to assist them in the commission of" fraud. 711 F. Supp. at 1296 (citations omitted).

Accordingly, even if the Court were to attribute EY Lebanon's conduct to EY USA, all of the Complaint's claims against EY USA must nonetheless be dismissed.

## CONCLUSION

EY USA respectfully submits that all claims against it in the Complaint should be dismissed with prejudice for failure to state a claim.

Dated: November 26, 2024        Respectfully submitted,

**HUGHES HUBBARD & REED LLP**

By: _/s/ Jennifer Suh_
Jennifer Suh
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
Tel.: (212) 837-6000
Fax: (212) 299-6882
jennifer.suh@hugheshubbard.com

_Attorneys for Ernst & Young U.S. LLP_