UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KARIM P. NAJJAR, *et al.*, individually
and behalf of all others similarly situated,

    Plaintiffs,

    v.

RIAD SALAMEH, *et al.*,

    Defendants.

No. 1:24-cv-05043

**OPINION**

**APPEARANCES**:

James E. Cecchi
CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068

    *Counsel for Plaintiffs*.

David William Kiefer
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017

    *Counsel for Defendant BDO USA, P.C.*

Boaz Cohen
HERBERT SMITH FREEHILLS KRAMER (US) LLP
1177 Avenue of the Americas
New York, NY 10036

    *Counsel for Defendants Deloitte, LLP*
    *and Deloitte & Touche, LLP*

Jennifer Suh
HUGHES HUBBARD & REED
One Battery Park Plaza
New York, NY 10004

*Counsel for Defendant Ernst & Young U.S. LLP*

**O'HEARN, District Judge.**

This matter comes before the Court on three separate Motions to Dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") by Defendants BDO USA, P.C. ("BDO USA") (ECF No. 37), Deloitte, LLP and Deloitte & Touche, LLP ("Deloitte USA") (ECF No. 38), and Ernst & Young U.S. LLP ("EY USA") (ECF No. 39). For the reasons that follow, all three Motions to Dismiss are **GRANTED**.

## I. BACKGROUND

### A. The Lebanese Financial System

This putative class action alleges a single conspiracy, allegedly orchestrated by the Lebanese central bank—non-moving Defendant Banque du Liban ("BDL")—and involving numerous Lebanese commercial banks, also non-moving Defendants, as well as various accounting firms, including moving Defendants BDO USA, Deloitte USA, and EY USA. (FAC, ECF No. 3 at ¶ 14). The alleged aim of the conspiracy was to increase BDL's U.S. dollar–denominated deposits. (*Id.*). Plaintiffs Karim P. Najjar, Halim Abou-Faycal, Younes Bazzi, Jacques Fontaine, Mounir Jermany, Ibrahim Khreibani, Bechara Rizk, Samar Shami, Joseph Tleiji, Slaim Tleiji, and Ramzi Zibaoui (collectively, "Plaintiffs"), are individuals who all allegedly lost money after making United States dollar deposits into these Lebanese banks.

Specifically, in the 1990s, after Lebanon pegged the value of its currency to the United States dollar, Lebanon's economy became largely dependent upon the inflow of foreign currency. (FAC, ECF No. 3 at ¶¶ 5–6). As a result, Lebanese banks began offering "remarkably" high interest rates to entice foreign deposits. (*Id.* at ¶ 8). However, these interest rates were unsustainable. (*Id.*

at ¶ 50). Plaintiffs allege that, as part of this scheme, BDL and various Lebanese banks engaged in "financial engineering" by offering unsustainably high interest rates to depositors despite knowing they would need to fraudulently induce new deposits to continue meeting those obligations. (*Id*. at ¶ 54). This allegedly included targeting U.S. citizens to solicit new deposits. (*Id*. at ¶ 55). According to Plaintiffs, once these foreign deposits were obtained, they were funneled through BDL and transferred out of the country, ultimately leaving depositors—such as Plaintiffs—unable to access or withdraw their funds. (*Id*. at ¶¶ 64, 73–74.)

### B. The Accounting Firms

#### 1. BDO USA

BDO USA is a Virginia corporation. (*Id*. at ¶ 40). It is the United States member firm of non-party BDO International, a global accounting network. (*Id*.). Plaintiffs allege that "BDO operates, effectively, as a single entity, and *touts its international integration and ability to provide professional services in all corners of the globe*." (*Id*.) (emphasis added). BDO International's Lebanon affiliate, BDO Lebanon, was one of the two accounting firms to audit one of the commercial banks allegedly involved in the scheme, non-moving Defendant Byblos Bank, S.A.L. ("Byblos"). (*Id*.).

#### 2. Deloitte, LLP and Deloitte & Touche, LLP

Defendants Deloitte USA are Delaware limited liability partnerships. (*Id*. at ¶ 41). Non-moving Defendant Deloitte Touche Tohmatsu, Limited ("DTTL") is a United Kingdom company and Deloitte USA is its United States member firm. (*Id*.). Plaintiffs allege DTTL is the parent of the "multinational consortium of professional services known as 'Deloitte'" and that Deloitte "*operates, effectively, as a single entity, and touts its international integration and its ability to*

*provide professional services in all corners of the globe.*" (*Id.*) (emphasis added). Deloitte's Lebanon affiliate was one of two accounting firms to audit BDL's financial statements. (*Id.*).

### 3. Ernst & Young USA LLP

Defendant EY USA is a Delaware limited liability partnership. (*Id.* at ¶ 42). It is the United States member of non-moving Defendant Ernst & Young Global Limited ("EY Global"), a United Kingdom company. (*Id.*). EY Global is the parent of the "multinational consortium of professional services known as 'EY.'" (*Id.*). And according to Plaintiffs, EY Global "*touts its international integration and ability to provide professional services in all corners of the globe.*" (*Id.*) (emphasis added). EY's Lebanon affiliate, along with BDO USA, audited Byblos' financial statements and, along with Deloitte USA, audited BDL's financial statements. (*Id.*).

### C. Byblos Accounting

Plaintiffs allege moving Defendants BDO USA and EY USA, along with non-moving Defendant EY Global (collectively, "Byblos Accounting Defendants"), signed off on Byblos' financial statements for the years ending in 2015–2018. (*Id.* at ¶ 66). Plaintiffs allege the significant increase in amounts due from BDL should have raised concerns and that they were, thus, negligent in performing their responsibilities. (*Id.*). Plaintiffs also allege the Byblos Accounting Defendants provided substantial assistance to Byblos in its fraudulent scheme to inflate its own financial records and in Byblos' participation in soliciting foreign depositors. (*Id.*).

### D. BDL Accounting

Plaintiffs allege moving Defendants Deloitte USA and EY USA, along with non-moving Defendants DTTL and EY Global (collectively, "BDL Accounting Defendants") bear responsibility for allowing BDL "to continue to orchestrate a fraudulent scheme to suck Dollars

4

into Lebanon for the benefit of insiders. . . ." (*Id*. at ¶ 97). And that they "completely failed to apply applicable accounting principles in their annual audits of BDL's financials." (*Id*. at ¶ 103).

### E. Plaintiffs' Claims

Plaintiffs bring this class action alleging the following class-wide claims against the moving Defendants: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d) (Count One); (2) unjust enrichment (Count Six); (3) negligence individually and on behalf of the Byblos subclass against the Byblos Accounting Defendants (Count Eight); (4) aiding and abetting fraud individually and on behalf of the Byblos subclass against the Byblos Accounting Defendants (Count Nine); (5) negligence against the BDL Accounting Defendants (Count Ten); and (6) aiding and abetting fraud against the BDL Accounting Defendants (Count Eleven). (*Id.* at ¶¶ 116–48, 186–89, 195–225).

## II.  PROCEDURAL HISTORY

On April 16, 2024, Plaintiffs filed their Complaint. (ECF No. 1). They filed the FAC on July 23, 2024. (ECF No. 3). On November 26, 2024, BDO USA, Deloitte USA, and EY USA each filed a Motion to Dismiss the FAC. (ECF Nos. 37–39). Plaintiffs filed an omnibus opposition to all three Motions on January 27, 2025, (ECF No. 42), to which moving Defendants separately replied on February 25, 2025. (ECF Nos. 50–52).

## III.  LEGAL STANDARD

To state a claim, a complaint needs only to provide a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotations, alterations,

and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 547.

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

## IV. **DISCUSSION**

All three moving Defendants argue that Plaintiffs' claims against them should be dismissed because Plaintiffs do not allege that they had any direct or indirect involvement in the Lebanese banking enterprise scheme and instead rely on a theory of liability—single entity—that has been widely rejected by courts across the country. (Deloitte USA Defs.' Br, ECF No. 38-13 at 1–2; BDO USA Def.'s Br., ECF No. 37-1 at 1–2; EY USA Def.'s Br., ECF No. 39-1 at 8–10). They also argue that even under the single entity theory of liability, Plaintiffs fall short of pleading a "single entity" because Plaintiffs' allegations are plainly contradicted by Defendants' websites' explanation of the relationship amongst affiliates. (Deloitte USA Defs.' Br., ECF No. 38-13 at 2; BDO USA Def.'s Br., ECF No. 37-1 at 2–3; EY USA Def.'s Br., ECF No. 39-1 at 8).

Plaintiffs respond by arguing that the Court should stay motion practice pending preliminary discovery relating to how these three transnational accounting practices operate. (Pls.' Br., ECF No. 42 at 14–15). They also maintain that the Moving Defendants are liable for the conduct of the transnational accounting firms under an agency theory of liability because the Moving Defendants exercised some control over the affiliate firms' operations and audits generally, which, they maintain, is sufficient to plead agency at this stage. (*Id*. at 17–18). Plaintiffs did not, however, file a cross-motion seeking a stay.

In reply, the Moving Defendants maintain that the Motions should not be stayed because Plaintiffs do not even attempt to show how the elements required for a stay were met and regardless, no amount of discovery could cure the deficiencies in the Complaint. (EY USA Def.'s Reply Br., ECF No. 52 at 1–3; BDO USA Def.'s Reply Br., ECF No. 50 at 2; Deloitte USA Defs.' Reply Br., ECF 51 at 1–2). The Moving Defendants also argue that for the first time in their brief

7

in opposition, Plaintiffs introduce the theory that the Moving Defendants are liable under common law agency principles and regardless of the procedural impropriety in doing so, Plaintiffs have not pleaded, and cannot plead, a principal-agent relationship that might give rise to liability. (BDO USA Def.'s Reply Br., ECF No. 50 at 3–8; Deloitte USA Defs.' Reply Br., ECF No. 51 at 1–6; EY USA Reply Def.'s Br., ECF No. 52 at 1–7).

The Court grants Defendants' Motions to Dismiss for the following reasons.

### A. Plaintiffs' Request to Stay Motion Practice

As a threshold issue, in their opposition, Plaintiffs request a stay of motion practice to engage in discovery. And though they indicate that they would "likely submit a letter to the Court indicating [their] intention to move (1) for leave to serve the requested discovery, and (2) a stay of this motion practice pending that discovery," (Pls.' Br., ECF No. 42 at 15–16), Plaintiffs never did so. Indeed, no cross-motion was filed seeking such relief. Instead, in opposition, they merely suggested that the Court stay the Motions and permit Plaintiffs to take limited discovery from these Defendants pertinent to the questions of affiliate liability. (*Id*. at 15). But Plaintiffs' request in their opposition to stay the Motions is wholly deficient. Beyond failing to file a cross-motion, Plaintiffs do not address any of the factors that the Court must consider in determining whether a stay is warranted such as judicial economy, prejudice to the non-moving party, hardship to the moving party, stage of the proceedings, and duration of the stay. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Thus,

Plaintiffs' request is denied.[1]

Regardless, it appears Plaintiffs' basis for a stay relates to Defendants' reliance in their Motions upon statements on their public websites, which Plaintiffs claim raise factual disputes. (*Id*. at 14–16). However, in evaluating the Motions, the Court can consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). And as all Moving Defendants have noted, Plaintiffs themselves seemingly rely on the Moving Defendants' websites in alleging that they all "tout[] [their] international integration and ability to provide professional services in all corners of the globe." (FAC, ECF No. 3 at ¶¶ 40–42). As such, it is entirely inconsistent for Plaintiffs to rely on some information found on the Moving Defendants' websites while at the same time asking the Court to ignore other information on the websites, particularly since the Court *can* consider documents referenced in the FAC and the Court can take judicial notice of these public websites. Indeed, courts in similar circumstances have considered public websites in similar cases on a motion to dismiss. *See In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170 (D. Mass.

---

[1] To be sure, Plaintiffs cannot rely on a request for future discovery to state a claim. *See Vita v. Vita*, No. 21-11060, 2022 WL 376764, at *6 (D.N.J. Feb. 8, 2022) ("But Plaintiff cannot use the potential for future discovery as an excuse for her failure to plead the bare minimum required to state a claim. . . ."); *Ogbin v. GE Money Bank*, No. 10-05651, 2011 WL 2436651, at *4 n.3 (D.N.J. June 13, 2011) ("A plaintiff's request for discovery cannot serve as a basis to deny a defendant's motion to dismiss, as the filing of such a motion serves to protect a defendant from being subjected to discovery, during which a plaintiff hopes that facts will be unearthed to support plaintiff's speculation.").

2002) (noting KPMG's home page—which the plaintiff relied on—belied the plaintiffs' claim that all member firms were a single entity); *Skidmore Energy, Inc. v. KPMG LLP*, No. 03-2138, 2004 WL 3019097, at *4 (N.D. Tex. Dec. 28, 2004) (referring to KPMG's website in finding that the website contradicted the plaintiffs' allegations of KPMG's operation as a world-wide organization). In fact, this Court in *In re Royal Dutch/Shell Transportation Securities Litigation* in evaluating a similar argument as the one made here by Plaintiffs—a single entity theory of liability—and similar allegations—that the international accounting firms held themselves out as integrated worldwide firms and touted themselves on their websites as a global firm—considered statements on the firm's website suggesting the contrary in the context of a motion to dismiss. 380 F. Supp. 2d 509, 571 (D.N.J. 2005). The Court will, thus, consider the websites of the Moving Defendants.

### B. RICO Claim

In their opposition brief, Plaintiffs now assert that they never intended to bring a RICO claim against the Moving Defendants. (Pls.' Br., ECF No. 42 at 27). But as the Moving Defendants rightly note—and as the pre-motion letters[2] make clear—they had every reason to believe otherwise. Had Plaintiffs timely clarified their position, they could have spared the Court and Defendants the burden of extensive and unnecessary briefing on this claim. Nevertheless, to the extent that the FAC alleges such a claim, it is dismissed as to the Moving Defendants.

---

[2] In an effort to resolve cases expeditiously, before bringing a motion to dismiss, the Court requires the moving party to submit a letter requesting a pre-motion conference and setting forth the basis for the anticipated motion and for the opposing party to submit a response.

### C. Single Entity Theory

Plaintiffs are not alleging that these Moving Defendants were directly responsible for their alleged harms but rather that under the single entity theory, these Defendants are vicariously liable for the actions of BDL's alleged financial engineering scheme. (FAC, ECF No. 3 at ¶¶ 40–43). Indeed, Plaintiffs do not allege that any of these Defendants participated, or even had knowledge, of the alleged conspiracy to defraud or that any of these Defendants audited the financial statements of the Lebanese banks involved in the alleged scheme.

Yet, this Court has repeatedly declined to treat different firms as a single entity. *See In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d at 571 (rejecting the plaintiffs' theory that KPMG and PWC were single entities based on allegations that the firm was a unitary worldwide firm since they touted themselves as one firm with accountants in offices worldwide because member firms in an international accounting association are not part of a single firm and are not agents of other member firms merely because they use the same name); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, No. 00-5965, 2005 WL 1365772, at *7–8 (D.N.J. June 8, 2005) (dismissing claims against KPMG LLP under a one firm theory based on the plaintiffs' allegations that KPMG holds itself out as one firm with accountants in offices world-wide because the materials referenced in the complaint—annual reports and balance sheets—make clear that the KPMG organization is an association of distinct offices/companies). Courts across the country have similarly agreed. *See In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021) ("As applicable to auditors, this District has 'declined to treat different firms as a single entity, holding them liable for one another's acts, simply because they shared an associational name and/or collaborated on certain aspects of a transaction.'"); *In re*

11

*Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170–71 (D. Mass. 2002) (collecting cases and noting "[s]everal courts have declined to treat different firms as a single entity, holding them jointly and severally liable for one another's acts, simply because they shared an associational name and/or collaborated on certain aspects of the relevant transaction"); *In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (dismissing complaint against Price Waterhouse entities outside the United States after rejecting argument that all Price Waterhouse affiliates worldwide were "in fact one entity, and acted as agents of one another" because the complaint only alleged fraud by the US entity); *Reingold v. Deloitte, Haskins & Sells*, 599 F. Supp. 1241, 1249, 1254 n.10 (S.D.N.Y. 1984) (concluding that existence of DH & S International, "an organization composed of a large number of affiliated accounting firms," did not prove DH & S was "a single worldwide entity" even though brochures described DH & S (U.S.) as "a single cohesive worldwide organization"); *Stevenson v. Thornburgh*, No. 23-4458, 2024 WL 645187, at *15 (S.D.N.Y. Feb. 14, 2024) (noting that courts have repeatedly held that KPMG Switzerland and KPMG US are not the same entities); *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03-0613, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004) ("Member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name."); *Skidmore Energy, Inc.*, 2004 WL 3019097, at *4 (dismissing claims against KPMG for actions made by KPMG Morocco because the plaintiffs' bare-bone allegations that KPMG was acting as a "worldwide organization" were insufficient to state a claim against it for the acts of the KPMG member firm in Morocco); *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2003 WL 21488087, at *10 (S.D.N.Y. June 25, 2003) (dismissing claims against an accounting entity after concluding the plaintiffs' bare-bone allegations that the entity

was an "umbrella organization for its member firms worldwide" was insufficient to plead that a member firm was acting as the accounting entity's agent); *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 385 (D. Md. 2004) (noting, in a securities matter, that "Deloitte U.S. and Deloitte Netherlands are legally distinct, autonomous firms and will be treated as such" and explaining that the "[p]laintiffs' emphasis on the facts that the two firms shared a brand name and the corporate website described a 'global' firm are similarly unavailing. It is well recognized that "[m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name."); *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 89 (D. Mass. 2002) (concluding in a securities case, "to the extent plaintiffs seek to impose liability on KPMG Singapore under the theory that all KPMG entities are one worldwide firm or all agents of one another, the Court has rejected that approach" and explaining that the complaint contained no allegations to support a reasonable inference that KPMG Singapore (or KPMG Korea) exercised control over the KPMG Belgium audit report); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 660, 662 (S.D.N.Y. 1997) (concluding, in evaluating personal jurisdiction, that "public relations materials suggest[ing] that Klynveld is a global firm or an international network of member firms" do not justify a finding of a partnership or agency between Klynveld and Peat Marwick US). The Court sees no reason to depart from the long line of cases uniformly rejecting the single entity theory of liability, particularly when Defendants' websites make clear that each member firm is a separate and independent firm.

"[A]bsent any allegations of direct liability, in order to hold the defendants vicariously liable for the actions of the [here, Lebanese] accounting firms, [P]laintiffs must allege facts in

13

support of one of the following three relationships: a principal/agent relationship; an alter-ego relationship; or a partnership." *Nuevo Mundo Holdings*, 2004 WL 112948, at *3. Here, like in *Nuevo Mundo Holdings*, Plaintiffs have not specifically alleged facts in support of any one of these relationships in their FAC. However, and like in *Nuevo Mundo Holdings*, Plaintiffs, in their responsive papers, argue that there is an agency relationship between the Moving Defendants and the Lebanese accounting firms. (Pls.' Br., ECF No. 42 at 16–20). Yet, it is well established that Plaintiffs may not amend their FAC through briefs submitted in response to the Motions. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Nuevo Mundo Holdings*, 2004 WL 112948, at *4 ("Regardless of which relationship plaintiffs argue, if their claims are to withstand defendants' motion to dismiss, their complaint must clearly and specifically articulate allegations of fact which can support the existence of at least one of these relationships."). Despite Plaintiffs' failure to explicitly allege an agency relationship in the FAC, the Court will nevertheless consider whether Plaintiffs have sufficiently alleged an agency relationship for purposes of judicial economy.

### D. Agency Liability

Plaintiffs maintain that because the Moving Defendants hold themselves out as constituting an integrated international accounting and consulting practice and allegedly acted as single entities, they should be held liable under an agency theory of liability. (Pls.' Br., ECF No. 42 at 16–20).

As all parties have addressed agency principles under New York law without dispute, the Court applies New York law as well. Under New York law regarding agency liability, "[t]he principal is held liable not because it committed some wrongdoing outside the purview of the

14

statute which assisted the wrongdoing prohibited by the statute, but because its *status* merits responsibility for the tortious actions of its agent." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1431 (3d Cir. 1994) (emphasis in original); *see also Cromer*, 2002 WL 826847, at *7–8. Further, the following three elements are required to establish a principal-agent relationship: (1) a "manifestation by the principal that the agent shall act for him; (2) acceptance of the undertaking by the agent; and (3) an understanding between the parties that the principal is to be in control of the undertaking." *Star Energy Corp. v. RSM Top-Audit*, No. 08-00329, 2008 WL 5110919, at *2 (S.D.N.Y. Nov. 26, 2008) (citation omitted). Moreover, "[t]here is no agency relationship where the alleged principal has no right of control over the alleged agent." *Morgan Guar. Trust Co. of N.Y. v. Rep. of Palau*, 657 F. Supp. 1475, 1481 n.2 (S.D.N.Y. 1987). Plaintiffs' sparse and conclusory allegations that these entities hold themselves out as an international organization fall far short of plausibly alleging an agency relationship.

And Plaintiffs' reliance on *In re Parmalat Securities Litigation* and *Cromer Financial Limited*—both which alleged an agency relationship—is unavailing because in both cases the plaintiffs *had* specifically alleged that the principal was involved in, or took other affirmative actions, with respect to the audits, which is entirely absent here. Specifically, in *In re Parmalat Securities Litigation*, the plaintiffs alleged that a partner at the member firm—Deloitte Italy—sought direction and help from the network coordinating entity—Deloitte Touche Tohmatsu—while conducting the audit. 375 F. Supp. 2d 278, 293–94 (S.D.N.Y. 2005). Similarly, in *Cromer*, the plaintiffs alleged that a Deloitte Touche Tohmatsu partner had an agency relationship with Deloitte Bermuda and that the partner had been involved with Deloitte Bermuda's audit. No. 00-2284, 2002 WL 826847 (S.D.N.Y. May 2, 2002). Conversely, here, there are no allegations that

the Moving Defendants participated in—much less controlled—any of the audits. And there are no allegations of a principal-agent relationship pled in the FAC. Thus, putting aside the procedural impropriety of raising this argument in their opposition briefs, because there are no allegations in the Complaint to support agency liability, Plaintiffs have failed to state a basis on which to hold these Defendants liable. As such, the Court need not reach the issue of whether Plaintiffs have stated a claim— here, unjust enrichment, negligence, and aiding or abetting fraud—against any Defendant.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED**. (ECF Nos. 37–39). An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**